PEOPLE ex rel. AMERICAN BANKNOTE CO. v. MORGAN, Comptroller.

(Supreme Court, Appellate Division, Third Department. November 15, 1899.)

STATES—CLAIM FOR PRINTING—LIABILITY.

To prepare engravings and furnish printed steamboat licenses, which, by implication, are required by Laws 1897, c. 592, known as the "Navigation Law," is public printing, which must be done by the public printer, under Executive Act, § 72 (Laws 1892, c. 683), providing that public printing payable by the state, other than legislative printing, shall be done by a public printer, with whom the secretary of state and comptroller have contracted to do the work; and hence a bill for such work done by a person other than the public printer is not a legal charge against the state.

Appeal from special term, Albany county.

Application by the people of the state of New York, on relation of the American Banknote Company, against William J. Morgan, as comptroller of the state of New York, for a peremptory writ of mandamus to compel defendant to audit the claim of the relator. From an order directing that a writ issue commanding defendant to audit the claim and draw his warrant therefor, together with the costs of the proceeding, defendant appeals. Reversed.

The superintendent of public works, September 16, 1897, gave to the relator an order to "prepare engravings in accordance with approved model, and furnish the following New York state steamboat licenses." Then follow specifications and quantities, and the price therefor, namely, $880, payable "upon completion of the work." The relator filled the order, and rendered its verified bill therefor at $880. It was approved by the superintendent of public works, and sent to the comptroller, with voucher, for audit and payment. The comptroller refused to audit it, alleging that the work should have been done by the public printer, and that he could not audit any other printing bills than those of the public printer; in other words, that the superintendent of public works had no authority to give the order to the relator.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John H. Coyne, Dep. Atty. Gen., for appellant.

Isaac L. Miller, for respondent.

LANDON, J. The superintendent of public works gave the relator the order assuming to act under chapter 592 of the Laws of 1897, known as the "Navigation Law," the object of which is to provide proper regulations respecting the navigation by steam vessels of the waters within the jurisdiction of the state, other than vessels subject to inspection under the laws of the United States. The act, among other things, provides for the examination and licensing of masters, pilots, and engineers of steam vessels navigating such waters. This is to be done by inspectors to be appointed and supervised by the superintendent of public works, whose duty it is to superintend the administration of the provisions of the first article of the act. Article 1, § 3. It is the duty of the inspectors to examine every person employed as master, pilot, or engineer of certain vessels as to his qualifications, and, if found satisfactory, to grant him a license for one year, which license shall be framed and hung up in a conspicuous place on the vessel. Section 17. The claim of the relator is for the execution of the superintendent's order for

the license blanks thus by implication required. Except for the provisions of the executive law (chapter 683, Laws 1892), no objection seems to exist to the audit of the relator's bill. Section 72 of this act provides that "the public printing payable by the state, other than legislative printing, shall be done as follows." Then follow provisions for letting the work by the secretary of state and the comptroller by contract to the lowest bidder. Under this section a contract was made for two years from January 20, 1897, with the Brandow Printing Company to do such public printing. It is specified in the contract that: "All printing and other work required by said act [the executive law] to be done by contract for the state officers above specified, their several offices and departments, shall be given to and ordered of the said party of the second part. * * * All steel and copper plate printing and all blank books shall be charged for at the lowest rates current in New York or Albany." These blank licenses were printed from steel or copper plates. The superintendent of public works was authorized to order such printing to be done. It was "public printing"; it was "other than legislative printing"; it was "payable by the state"; and therefore it was such as the executive law requires "shall be done" by the public printer under his contract made pursuant to such act. There is nothing in the navigation law inconsistent with section 72 of the executive law, and it was the duty of the superintendent of public works to respect its provisions, and to give this printing to the public printer, or at least not to give it to any one else. Hence the relator's bill is not a legal charge against the state, and the comptroller was right in refusing to audit it.

The relator urges that the principal part of its work consisted in engraving the fine plate by which the printing was done. This may be conceded. But the engraving was a necessary incident to the printing. The superintendent of public works had no authority to order engraving except as such incident. If the provision of the executive law relative to the public printing does not authorize such engraving, then the superintendent of public works should limit his orders to a less expensive style of printing. It appears that the relator retains the plate as its own property, as it would retain its types in a less expensive job. To distinguish between the engraving and printing, and make the latter an incident of the former, would be to give judicial sanction to an easy evasion of the letter and spirit of the act. The manifest intent of the provision was to protect the state against abuses in this line of expenditure, and it should be construed in that spirit. Thus, an honest unauthorized claim, like the one before us, must sometimes be held up, in order that dishonest ones may not succeed through the same methods.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.