(64 App. Div. 223.)

### AMERICAN BANK NOTE CO. v. STATE.

(Supreme Court, Appellate Division, Third Department. September 13, 1901.)

STATES—CLAIM FOR PRINTING—DEFENSES—EXECUTIVE LAW.

After decision by the court of appeals that a claim against the state for blank licenses was illegal, owing to lack of authority in the superintendent of public works to purchase from the claimant, because of the executive law (Laws 1892, c. 683), authorizing purchases from the state printer only, Laws 1900, c. 123, conferred jurisdiction on the court of claims to determine such claim, and authorized the court to render judgment for the claimant for such sum as was just and equitable, if the facts proved made out a case against the state which would create a liability were the same established in a court of law or equity against an individual or corporation, together with the costs and disbursements paid by the claimant in the previous litigation. *Held*, that it was no defense to such claim on presentation to the court of claims that such superintendent was without authority to purchase from the claimant, as it was the legislative intention to remove the bar created by the executive law requiring such purchases from the state printer.

Parker, P. J., and Smith, J., dissenting.

Appeal from court of claims.

Action by the American Bank Note Company against the state of New York. From a judgment of the court of claims dismissing the claim, claimant appeals. Reversed.

The claimant above named, on or about September 16, 1897, upon the written order of the superintendent of public works, furnished eight books of blank licenses and certificates to be issued to steamboat inspectors, and these blanks were thereafter used by the state,—used after payment therefor had been refused by the comptroller,—and none of them were ever returned to the claimant. There is no question about the value of the blanks so furnished. There is no question but the superintendent of public works had the right to order the blanks, and create a liability on the part of the state to pay for them; but it is claimed, and the court has heretofore held, that he was authorized to order them only from the Brandow Printing Company. The Brandow Printing Company has not been paid for these licenses, nor has this company any claim against the state therefor. The supreme court, by mandamus, required the comptroller to audit the claim. The appellate division, on appeal, reversed that order, and the court of appeals affirmed the appellate division. People v. Morgan, 45 App. Div. 86, 60 N. Y. Supp. 1100; Id., 161 N. Y. 643, 57 N. E. 1120. After decision by the court of appeals holding that the claimant had no legal claim against the state, owing to the lack of authority in the superintendent of public works to order the licenses from any other than the Brandow Printing Company, the claimant applied to the legislature of the state for relief, and the legislature passed the following law:

"Section 1. Jurisdiction is hereby conferred upon the court of claims to hear, audit and determine the alleged claim of the American Bank Note Company doing business in New York City, N. Y., against the state for engraving licenses for masters, pilots, engineers, pilots and engineers, alleged to have been delivered to said state, and to make an award and to render judgment therefor against the state and in favor of said claimant.

"Sec. 2. No award shall be made or judgment rendered herein against the state unless the facts proved will make out a case against the state which would create a liability were the same established in evidence in a court of law or equity against an individual or corporation, and in case such liability shall be satisfactorily established, then the said court of claims shall award to and render judgment for the claimant for such sum as shall be just and equitable, together with the costs and disbursements paid said state by said American Bank Note Company in a certain proceeding instituted by it against William J. Morgan, as comptroller of said state, for a peremptory writ of

71 N.Y.S.—66½

mandamus, notwithstanding the lapse of time accruing since said claim ac-crued, provided the claim hereunto is filed with the court of claims within a year after the passage of this act."

Chapter 123, Laws 1900.

By reason of the foregoing act, the claim was presented to the court of claims, and was there rejected.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Isaac L. Miller, for appellant.

George H. Stevens, Dep. Atty. Gen., for the State.

KELLOGG, J. To determine with reasonable certainty the intention of the legislature, as expressed in the act above quoted, it is necessary to bear in mind the facts as they existed and were known to the legislature at the time the act was passed. It is to those facts that the law has reference, and the inquiry must be, what remedy did the legislature intend to provide? It was known to the legislature, when the act was passed, that the superintendent had general power to bind the state in the purchase of materials such as this claim is for; that the power was an incident to his office. It also knew that such general power was limited by the so-called "Executive Law" (chapter 683, Laws 1892) to making purchases from the state printer only, and, except for that law, the superintendent might purchase from the claimant here. Referring to this identical claim, Landon, J., says (People v. Morgan, 45 App. Div. 86, 60 N. Y. Supp. 1109):

"The claim of the relator is for the execution of the superintendent's order for license blanks thus by implication required. Navigation Law (chapter 592, Laws 1897). Except for the provisions of the executive law, no objection seems to exist to the audit of relator's bill."

The legislature also knew that this claim, because of the provisions of the executive law, was illegal and invalid. It knew of the mandamus issued by the supreme court to the comptroller, directing its payment. It knew that the appellate division had reversed the order directing the writ to issue, and that the court of appeals had affirmed the appellate division, and that it had been declared by the court of last resort that the claim was invalid because of the provisions of the executive law. The fact that the legislature was fully informed does not depend upon inference. Clear evidence that it was fully informed is made to appear in the act itself. The second section of the act provides for repayment to the claimant of the costs paid by the claimant to the state in that proceeding in the courts. The legislature, therefore, knew what the claim was for; how it arose; that the state had, by the unauthorized action of one of its officers, been benefited at the expense of the claimant; and it also knew that the claimant was without remedy in the court of claims or elsewhere, unless the defense created by the executive law was waived. The legislature very well knew that, so long as the executive law could be invoked, the court of claims, and every other court, would be powerless to grant relief to the claimant. With all this knowledge, the legislature passed the act in question. It was evi-

dently intended as a measure of relief. It was clear to the legislature that there was but one way by which any relief could be granted, and that was by removing from this special case the bar created by the executive law, and having the state take the unprotected position of an individual or corporation, and having the claim disposed of upon equitable grounds. The act itself has, upon its face, this intention. It were otherwise a fruitless act, a mockery, a reproach to the state greater, even, than the reproach of shielding itself from payment because the purchase was unauthorized, though innocently made, and notwithstanding the state then held and used the thing purchased. I think it entirely consonant with the dignity of a great state to assume that it had a purpose in passing this act,—a purpose beneficial to the claimant. I think the legislature intended to provide a way by which this claim could be paid. The legislature could not pass a law auditing the claim because of the constitutional limitation on its powers in this respect, but that it did intend to remove the defense to the claim created by the executive law is, to my mind, beyond question. The removal of this defense was quite within the power of the legislature, as held in Cole v. State, 102 N. Y. 48, 6 N. E. 277, and O'Hara v. State, 112 N. Y. 152, 19 N. E. 659. In the Cole Case, Rapallo, J., says:

"But, can it be maintained that it would be beyond the power of the legislature, in special cases, where, in its judgment, justice and right demanded it, to give power to the board of claims to disregard defenses strictly legal?"

The removal of this bar was necessary to any relief whatever, and, this bar removed, left to the court of claims an adjudication upon the evidence, as though the executive law had never been passed. That court could determine whether the superintendent of public works had power, if not restricted by the executive law, to purchase these license blanks from the claimant. They were to determine their value, and, if the claim was found to be just and equitable, then the money paid to the state by way of costs in litigating the claim on legal grounds was to be added to the amount allowed for the blanks purchased. The legislature could not have sent this claim to the court of claims to determine whether there had been a ratification of the purchase on the part of any state officer. The lawmaking branch of the government did not need to be told that the power to contract and the power to ratify lodge together in the principal only. Neither can be exercised unless lawfully delegated. The legislature knew, as well as the court of claims or any other court could know, that the state had never delegated the power of ratification to any official where the power to contract was not given. Hence, to send the claim to the court to be disposed of on any theory of ratification by a state officer would have been nothing short of a legislative rejection of the claim. To impute to that august body an intention to juggle with the claim, or to be so altogether facetious, is to express a lack of respect for this branch of the government, and such imputations are not to be judicially entertained.

It must be also borne in mind that the facts disclosed show a meritorious claim. Landon, J., in People v. Morgan, 45 App. Div. 86, 60 N. Y. Supp. 1109, had said in respect to this claim, before the

passage of this act: "Thus an honest, unauthorized claim, like the one before us, must sometimes be held up, in order that dishonest ones may not succeed through the same methods." That there was no intentional evasion of the law on the part of the claimant nor on the part of the superintendent of public works is disclosed by the record, and this was doubtless known to the legislature. It furnishes no light upon the intention of the legislature to refer to other acts passed relating to other claims, for this act is peculiar in its wording, and was made to fit the particular facts in the knowledge of the legislature. The court of claims has said in the opinion handed down, "The claimant must, therefore, prove a cause of action against the state without aid from the special law." In other words, the act of the legislature was only a device to deceive the claimant. The court of last resort had already disclosed that no "cause of action" could be proved without the aid of a special law, which, in effect, removed the bar created by the executive law. I think the court of claims was in error in holding, as it apparently did, that the special act was purposeless, and fruitless, and void of honest intention to furnish any adequate relief. The case should be tried upon the theory that the legislature was honest, and the act itself has some virtue in it. It is not difficult to discover the legislative intent, as we have shown. It intended to enable the claimant to reach its equitable rights. It intended to remove the bar created by the executive law as the only possible way by which such equitable rights could be reached; and, in the light of all the facts known to the legislature, I do not think it failed in the use of appropriate language to express that intention. This enabling act does not, in express terms, ratify and validate the act of the superintendent of public works in making this purchase. Neither did the enabling act in the O'Hara Case ratify and validate the unauthorized acts of the quarantine officials in employing the claimants in that case, but the court said that the intention of the legislature could have been nothing short of that when it gave power to the board of claims to award compensation. By implication, such was the effect of the act here in waiving the defense created by the executive law.

The judgment of the court of claims should be reversed, and a new trial granted, with costs to the appellant to abide the event.

EDWARDS and CHASE, JJ., concur in result. PARKER, P. J., and SMITH, J., dissent.