THE BOARD OF SUPERVISORS OF THE COUNTY OF CAYUGA, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

1. REGULATION OF TAXATION — REIMBURSEMENT OF COUNTY BY STATE. If, in the opinion of the legislature, one county or political division has been compelled to bear more than its proper share of taxation, or taxes have been locally assessed and paid, which in equity should have been charged upon the whole state, the legislature, in the absence of constitutional limitation, may remedy the injustice and direct reimbursement out of the treasury of the state.

2. EXPENSES OF TRIALS FOR CRIMES COMMITTED IN STATE PRISON — REIMBURSEMENT OF CAYUGA COUNTY — CONSTITUTIONALITY OF L. 1885, CH. 428. The enactment of chapter 428, Laws of 1885, authorizing the Board of Claims to audit the claim of Cayuga county for moneys expended in 1873–1877 in the trials of convicts in the Auburn state prison, for crimes committed in the prison, was within the scope of the legislative power over taxation, and was not in conflict with any restriction or inhibition of the Constitution.

3. COUNTY CLAIM NOT A PRIVATE CLAIM. The claim of Cayuga county, recognized by the act of 1885 and referred to the Board of Claims for audit, was not a "private" claim, within the purview of the provision of the Constitution (Art. 3, § 19, amdt. of 1874), which declares that "the legislature shall neither audit nor allow any private claim or account against the state, but may appropriate money to pay such claims as shall have been audited and allowed according to law."

4. LIMITATION BY LAPSE OF TIME. The limitation imposed by the Constitution (Art. 7, § 14, amdt. of 1874) upon the audit, allowance or payment of any claim against the state which, as between citizens of the state, would be barred by lapse of time, only applies where a tribunal has been constituted by the legislature to hear and determine the claim in

controversy, and only commences to run from the time of the constitution of such tribunal.

5. CLAIM NOT BARRED. The claim of Cayuga county, recognized by the act of 1885, conferring jurisdiction upon the Board of Claims to audit it, was not barred under section 14, article 7 of the Constitution, at the time of the passage of the act, for the reason that up to that time no tribunal existed before which the claim could be heard and adjudicated.

6. VALIDATION OF CLAIM. The act of 1885 validated the claim recognized thereby, subject to adjustment by the Board of Claims.

7. REIMBURSEMENT OF COUNTY NOT A GIFT TO A CORPORATION. The act of 1885 was not an infraction of the provision of the Constitution (Art. 8, § 10, amdt. of 1874), that "neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation or private undertaking."

(Argued May 5, 1897; decided June 8, 1897.)

APPEAL taken in behalf of the state from an award of the Board of Claims, made December 21, 1887, against the state in favor of the county of Cayuga.

The material facts are as follows :

In the years 1873 to 1877, inclusive, several convicts in the state prison at Auburn were indicted and tried in the county of Cayuga for crimes committed in the prison. In three of the cases the indictments were for murder in the first degree; in two of them the defendants were convicted of the crime charged, and after appeals had been taken and the convictions affirmed, were executed. In the other case the conviction was for murder in the second degree, and the defendant was sentenced to imprisonment for life. The indictments in the other cases were for assault with a deadly weapon, or with intent to kill, and upon trial the defendants were convicted. In the prosecution of the various indictments large expenses were incurred and paid by the county of Cayuga. In the supply bill of 1876 (Chap. 193) the legislature appropriated " the sum of five thousand dollars or so much thereof as may be necessary," to reimburse the county for the expenses incurred and paid by the county in 1873, 1874 and 1875 for the trial of certain convicts named in the act, for crimes committed during their imprisonment. It was provided in the act that payment thereunder should be made by the state treas-

urer on the warrant of the comptroller, but that "no warrant shall be issued except in case of salaries, until the amounts claimed shall have been audited and allowed by the comptroller, who is hereby authorized to determine the same." The county appplied to the comptroller for reimbursement under this act, but he practically ignored the claim, construing the word "trial" in the act to mean "trial fee," and allowed twenty dollars only in each case and disallowing expenses. The county refused to accept the sum offered, which was less than two hundred dollars. The supply bill of 1877 contained a similar provision, except that it appropriated a larger amount, but the item was vetoed by the governor. The supply bills of the years 1878, 1880 and 1882 also contained appropriations for the reimbursement of the county for expenses paid up to the time the several appropriations were made, but these items were also vetoed by the governor, as was also a bill passed in 1882, to refer the claim to the board of audit. A similar bill passed in 1883 failed to become a law by the non-action of the governor. In 1885 the legislature passed the act (Chap. 428 of the Laws of that year) upon which the present controversy arises. It is entitled "An act to authorize and empower the State Board of Claims to hear, audit and determine the claims of Cayuga and Chemung counties for moneys expended in the trials of convicts for crimes committed during their imprisonment in Auburn State prison and in the State Reformatory at Elmira, and to make awards therefor." The act contains but a single section and so far as here material is as follows : " Cayuga county is hereby authorized to present a claim to the State Board of Claims for moneys expended by said county in the criminal prosecutions and convictions of Michael Donohue, John Coughlin, Patrick Eagan, Thomas C. Hardy, Patrick Clifford, Edwin Thomas, Harvey Thorpe and William Barr, and each of them, for crimes committed by them while confined in the state prison at Auburn. And the said Board of Claims is hereby authorized and required to hear and adjust each of said claims, including the expenses of executing said convic-

tions, and award the amounts thereof, or such sums as said board shall consider equitable and just."

The county filed its claim before the Board of Claims for the sum of $10,476.18 under this statute. It was brought to a hearing upon proper notice to the attorney-general, and, after evidence taken, the board awarded the claimant the sum of $8,383.24. The board rejected an item of $2,090.60, paid by the county for a military guard to protect the jail during the incarceration therein of one Thomas, one of the convicts in the state prison, who was tried and convicted of murder. The case comes before us on an appeal taken by the state from the award of the Board of Claims. The state rests its appeal upon the sole ground that the act of 1885 is in contravention of certain provisions of the State Constitution, which are referred to in the opinion.

*T. E. Hancock* and *G. D. B. Hasbrouck* for appellant. The Board of Claims erred in its finding of law that by chapter 428 of the Laws of 1885 the state assumed a liability for the moneys expended by the county of Cayuga in the prosecution of criminals for crimes committed by them while confined in the state prison at Auburn. (*Lynch* v. *Nugent*, 80 Iowa, 429 ; *State* v. *Staub*, 40 Conn. 569 ; *Baldwin* v. *Mayor, etc.*, 2 Keyes, 398 ; *Cole* v. *State*, 102 N. Y. 52 ; *O'Hara* v. *State*, 112 N. Y. 153 ; *Bowen* v. *State*, 108 N. Y. 169 ; *Sipple* v. *State*, 99 N. Y. 284 ; *Rexford* v. *State*, 105 N. Y. 229 ; *Stone* v. *State*, 138 N. Y. 132.) The claim is not just or equitable. (*In re Flatbush*, 60 N. Y. 406 ; *Cole* v. *State*, 102 N. Y. 53 ; *Weismer* v. *Vil. of Douglas*, 64 N. Y. 91 ; Endlich on Interp. Stat. § 271.) The claim is barred by lapse of time. (Const. N. Y. art. 7, § 14 ; L. 1876, ch. 444 ; L. 1883, ch. 205 ; *Corkings* v. *State*, 99 N. Y. 499 ; *Gates* v. *State*, 128 N. Y. 221.) If the state by the act of 1885 assumed a liability, then the act is in effect an attempt to audit and allow the claim, and is, therefore, unconstitutional. (Const. N. Y. art. 3, § 19 ; *Williams* v. *Boynton*, 147 N. Y. 433 ; *Cole* v. *State*, 102 N. Y. 48.) The payment of the state's money on the award

herein would constitute a gift thereof, and such payment and award are prohibited by the Constitution. (Const. N. Y. art. 8, §§ 9, 10; L. 1892, ch. 685; *In re Flatbush,* 60 N. Y. 406; *People ex rel.* v. *Loew,* 102 N. Y. 475; 96 N. Y. 145; 13 N. Y. 149; *Perkins* v. *Inhabitants of Milford,* 59 Me. 315.)

*John D. Teller* for respondent. The act of the legislature authorizing the Board of Claims to hear and make awards upon the claims stated, was a recognition of meritorious services rendered the state, which converted a moral obligation into a legal liability. (4 R. S. chap. 3, tit. 2, § 53; 1 R. S. 385.) The legislature has full power to discharge legal or equitable obligations of the state, and the exercise of such power is not reviewable by the courts. (*People ex rel.* v. *Dayton,* 55 N. Y. 367; *People ex rel.* v. *Keeler,* 99 N. Y. 479; *Town of Guilford* v. *Supervisors,* 13 N. Y. 149.) The legislature, under the power to levy taxes, can apportion the public burdens among all the taxpaying citizens of the state as well as among those of a particular section or division. (*Town of Guilford* v. *Supervisors,* 13 N. Y. 143; *People ex rel.* v. *Lawrence,* 41 N. Y. 141; *Gordon* v. *Cornes,* 47 N. Y. 608; *Town of Duanesburgh* v. *Jenkins,* 57 N. Y. 189; *People ex rel.* v. *Supervisors,* 67 N. Y. 115; *Darlington* v. *Mayor, etc.,* 31 N. Y. 190; *Genet* v. *City of Brooklyn,* 99 N. Y. 306.) The fact that an assessment has been had and payment made by the county, and that the purpose of the legislature in question is to reimburse the county, does not render the act unconstitutional. (*Howell* v. *City of Buffalo,* 37 N. Y. 267; *Lamb* v. *Connolly,* 122 N. Y. 536; *City of Rochester* v. *Town of Rush,* 80 N. Y. 311; *Mayor* v. *Nat. Bank,* 111 N. Y. 446.) Chapter 428 of the Laws of 1885 is not violative of section 16 of article 3 of the State Constitution, providing that no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title. (*Conner* v. *Mayor, etc.,* 5 N. Y. 285; *In re Van Antwerp,* 56 N. Y. 261; *People ex rel.* v. *Banks,* 67 N. Y. 568; *Wenzler* v. *People,* 58 N. Y. 516; *People ex*

*rel* v. *Willsea*, 60 N. Y. 507; *Board Suprs.* v. *Allen*, 99 N. Y. 532; *Cole* v. *State*, 102 N. Y. 48.)  The act of the legislature authorizing the Board of Claims to audit this claim and make the award appealed from is not a violation of section 10, article 8, of the Constitution.  (*Lewis* v. *State*, 96 N. Y. 71; *Splittorf* v. *State*, 108 N. Y. 205; *People* v. *Ingersoll*, 58 N. Y. 21; *People ex rel.* v. *Dayton*, 55 N. Y. 367; *Hassan* v. *City of Rochester*, 67 N. Y. 535; *In re W. S. A. & P. R. R. Co.*, 115 N. Y. 442; *In re N. Y. & L. I. B. Co.*, 148 N. Y. 551.)  The liability assumed by the state in the act of 1885 did not involve the audit or allowance by the legislature of a private claim or account within the meaning of section 19 of article 3 of the Constitution.  (*Cole* v. *State*, 102 N. Y. 48.) The claim in question was not one which, as between citizens of the state, would have been barred at the time of the passage of the act of 1885.  (*O'Hara* v. *State*, 112 N. Y. 146; *Yaw* v. *State*, 127 N. Y. 195; *McMaster* v. *State*, 108 N. Y. 555; *Evans* v. *Cleveland*, 72 N. Y. 486; *Lyon* v. *Park*, 111 N. Y. 350; *Coxe* v. *State*, 144 N. Y. 396.)  The provision of the Constitution (Art. 7, § 14) as to the limitation of claims, does not extend to this claim because it was first duly presented within the time allowed by law, and has been prosecuted with due diligence from the time of such presentment.  (*Corkings* v. *State*, 99 N. Y. 491; *O'Hara* v. *State*, 112 N. Y. 146; *Coxe* v. *State*, 144 N. Y. 396; *Parmenter* v. *State*, 135 N. Y. 154; *McMaster* v. *State*, 108 N. Y. 555; *Yaw* v. *State*, 127 N. Y. 195.)  It was proper that the claim should have been presented by the board of supervisors, and that the award should be made to them.  (1 R. S. 364, §§ 3, 4; *Wilde* v. *Bd. of Suprs.*, 9 How. Pr. 315.)

ANDREWS, Ch. J.  By the law of England and of the American states indictable offenses are to be tried, subject to certain exceptions, within the county in which they were committed.  In this state from an early period the state has assumed the expense of maintaining the judiciary of the state other than judges of local courts, but the expense

incurred in the arrest, indictment and prosecution of offenders other than the expense of maintaining the judges has been imposed by statute upon the several counties where the proceedings were had and made a county charge. (1 Rev. Laws, 499, § 17; 1 Rev. St. 385, § 3.) An exception to this general policy was created by chapter 389 of the Laws of 1882. By that statute the state assumed to pay the expenses of the public prosecution and trial of convicts in the state prisons and in the state reformatory at Elmira for offenses committed by them during their imprisonment, and in cases of convictions for murder in the first degree the expense of executing the sentence and judgment. The statute was prospective only and afforded no remedy for the reimbursement to counties of expenses previously incurred and paid under the antecedent law, in the prosecution and trial of persons for crimes committed during their incarceration in the penal institutions mentioned in the act. The reasons which influenced the legislature in enacting the statute of 1882, shifting the burden of enforcing the criminal law in the cases mentioned from the several counties and placing it upon the state at large, are obvious. The state prisons are state institutions established for public and general purposes, in the maintenance of which the whole state is interested. Persons convicted of a state prison offense are committed to these institutions wherever within the state the conviction may have been had. The government and discipline of the state prisons are vested in the wardens and other state officers. The convicts are under their exclusive control. The county in which a state prison may be located has no voice in its management, and it can exercise no police or other supervision over its inmates. The convicts include men of desperate character, and crimes of violence committed by prisoners are frequent. The legislature may well have considered that under these circumstances it was just that the burden of the expense of administering the criminal law in those cases should not be borne exclusively by the locality, but should be made a charge upon the state at large. There can be no doubt that the act of

1882 was a legitimate exercise of legislative power. It rests upon the power of taxation, the most essential attribute of sovereignty, necessary to the very existence of a state, and which has been vested by the people in the legislature, subject only to such restrictions and limitations as may be found in the State or Federal Constitution. It includes the power to apportion the public burthens in such manner as may seem best to the legislature, and while the power of taxation is to be exercised for public purposes, its scope is not to be narrowed by refinement, but it exists in unconfined vigor, except where, by express language or necessary implication, its exercise is restricted by the organic law. Speaking of the power of the legislature, DENIO, J., in *Town of Guilford* v. *Supervisors of Chenango Co.* (13 N. Y. 143), says : " Independently of express constitutional restrictions, it can make appropriations of money whenever the public well-being requires or will be promoted by it; and it is to judge of what is for the public good. It can, moreover, under the power to levy taxes, apportion the public burthens among all the taxpaying citizens of the state, or among those of a particular section or political division." This language is very broad, and if it goes to the extent of affirming an irreviewable discretion in the legislature in every case to determine when taxation pertains to the public good, may possibly admit of qualification, but as exhibiting the general scope of the taxing power is forcible and true. What the legislature did by the act of 1882 it might have done at the time the state prisons were established, and from the first have made the expenses of the trial of convicts for crimes committed during their imprisonment, a state instead of a county charge. The same reasons for this departure from the general policy existed then as in 1882, and if such an enactment had then been made, the present question would never have arisen. The expenses which, under the act of 1885, were to be reimbursed to the county of Cayuga, would never have been charged to or collected from the county, except as included in its proportionate part of the general tax levy of the state.

· The act chap. 428 of the Laws of 1885, under which the award was made by the Board of Claims, from which this appeal is taken, was passed after many prior unsuccessful applications to the legislature by the county of Cayuga to obtain reimbursement for expenses incurred by the county in the trial of convicts in the state prison at Auburn, for crimes committed therein in 1873 and following years and prior to the statute of 1882.   By the statute of 1885, the legislature recognized the justice of the claim, although manifestly it had no legal foundation.   The expenditure had been incurred and paid by the county in obedience to the duty cast upon it by the law in force at the time, a duty which the state could lawfully impose.   But, in the apportionment of public burthens, exact equality is generally impracticable, and in some cases great injustice is done.   It is clearly within the scope of legislative power to rectify wrongs of this character, and if, in the opinion of the legislature, one county or political division has been compelled to bear more than its proper share of taxation, or taxes have been locally assessed and paid, which in equity should have been charged upon the whole state, there can be no doubt that, in the absence of constitutional limitation, the legislature may remedy the injustice and direct reimbursement out of the treasury of the state.   This would plainly be the exercise of a legislative power, and the act of 1885 is unassailable, unless it is in conflict with some restriction or inhibition upon legislative power to be found in the Constitution.   It is not claimed that the Board of Claims in making the award exceeded the authority conferred by the act of 1885.   The award represents the sum actually expended and paid by the county of Cayuga in the prosecution of the persons mentioned, and in the execution of the judgments rendered.

Among the constitutional objections urged to the act is one based upon section 19, art. III.   This section declares that " The legislature shall neither audit nor allow any private claim or account against the state, but may appropriate money to pay such claims as shall have been audited and allowed by

law." (It is a decisive answer to this objection that the claim of the county of Cayuga, recognized by the act of 1885, and referred to the Board of Claims, was not a " private" claim within the purview of the section.) This section first became a part of the Constitution by the amendment of 1874. It was intended to remedy the manifest evils of special legislation in the interest of private claimants, and to deprive the legislature of the power to pass laws which directly, and of their own force, should allow and fix the amount of private claims against the state. The practice which had before prevailed was subject to great abuses. The legislature could not, in the majority of cases, act intelligently upon the subject, and was subject to influences which had led, and were likely to lead, to acts of legislation depleting the public treasury for the benefit of claimants whose claims had no foundation in law or equity. The section interposed an obstacle in the path of persons asserting unfounded claims against the state. It required their audit and allowance by some officer, board or tribunal designated by law, before the legislature could make an appropriation for their payment. Private claims against the state, up to the adoption of this section, mainly arose out of the acts of the state in appropriating lands for the canals, and upon contracts for their construction and improvement, or for injuries resulting to persons or property from the canals or their management. Jurisdiction to hear claims of this general character had from time to time been conferred upon the canal appraisers and the canal board. (1 Rev. St. 225; 3 id. 147; Laws of 1870, chap. 321.) But the legislature was nevertheless open to claimants, and statutes were passed from time to time directly granting relief. It is plain, in view of contemporary history, that the words " private claims " in section 19, art. III of the Constitution, were intended to designate claims of the same general character as those which arose in connection with the administration of the canal system; that is to say, claims made against the state in behalf of a private interest, as distinguished from claims of a public character. The word

"private" is descriptive, and was used as the antithesis to the word "public;" and, by necessary implication, claims of a public nature are not included within the inhibition. That the claim made by the county of Cayuga for reimbursement was a public, as distinguished from a private claim, does not, we think, admit of question. There was, in a proper sense, but one party to the transaction, and that was the state, and the act of 1885 was merely the reapportionment by the state of the burden of taxation in accordance with its sentiment of justice. The county is called a claimant, and its demand for reimbursement the presentation of a claim against the state. In truth, the transaction was an appeal by one political division of the state to the sovereign power for justice in the administration of the common interests. The county had no claim such as one individual might assert against another, each standing upon his own rights as a distinct and independent personality. Counties possess *quasi* corporate powers, but they are mere trustees of the public rights and powers conferred upon them as the agents of the state. Their corporate capacity is superimposed upon them by the sovereign power. They are auxilliary to the government of the state and discharge the functions imposed upon them in matters of taxation and local government as representatives of the central and supreme authority. (See *Darlington* v. *Mayor, etc.*, 31 N. Y. 164–196; Dillon on Mun. Corp. §§ 22, 23; 1 Rev. St. 364.) It was as a representative of a part of the general public that it urged its claim, and the money when recovered will go into its treasury and be applied to public uses.

It is further claimed that the act attempts to validate and allow a claim which as between citizens of the state was at the time of its enactment barred by lapse of time, in violation of sec. 14, art. VII, which is as follows: "Neither the legislature, canal board, canal appraisers, nor any person or persons acting in behalf of the state, shall audit, allow or pay any claim which as between citizens of the state would be barred by lapse of time. The limitation of existing claims shall begin to run from the adoption of this section, but this provision

shall not be construed to revive claims already barred by existing statutes, nor to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law and prosecuted with due diligence from the time of such presentment; but if the claimant be under legal disability the claim may be presented within two years after such disability is removed."

This section was placed in the Constitution by an amendment in 1874, at the same time as section 19 of art. III, before considered, and together they inaugurated a new system regulating the audit, allowance and payment of claims against the state. They established two cardinal rules upon the subject: *First*, that the audit and allowance of private claims should be made by some body or authority designated by the legislature, and not by the legislature itself; *second*, that neither the legislature nor any other authority should have power to audit, allow or pay any claim which as between citizens would be barred by lapse of time, excluding from the operation of the section existing claims not already barred by existing statutes, duly presented within the time allowed by law and diligently prosecuted, and as to such claims the limitation of time commenced to run from the adoption of the amendments. The payments made by the county of Cayuga were made in part before the adoption of section 14, art. VII, and in part thereafter. The act of 1885 was passed twelve years after the first expenses were incurred and paid by the county, and eight years after the date of the last item in the claim. It is insisted that the act of 1885 violated section 19, art. III, in that it was a legislative allowance of the claim in question. The answer to this objection has already been given, namely, that the claim was not a private but a public claim, and not within the purview of that section. But we are not to be understood by giving this answer to the objection as impliedly assenting to the proposition that if it had been a private claim the legislative recognition of its justice by the act of 1885, and the authority given to present it to the Board of Claims

and the investing of that tribunal with jurisdiction to hear and adjust the same and to make such award as the board shall consider just and reasonable, was an allowance of the claim by the legislature within the prohibition of that section. The cases of *Cole* v. *State* (102 N. Y. 48) and *O'Hara* v. *State* (112 N. Y. 146) are adverse to that construction.

But the objection based on section 14, article 7, presents another distinct question. That section prohibits an allowance of any claim, either by the legislature or any other body, which as between citizens would be barred by lapse of time. Was the claim of the county of Cayuga when the act of 1885 was passed (if in a proper sense it was a claim), barred under this section? That act for the first time created a tribunal having jurisdiction to hear the claim. It could not have been presented to or heard by the canal appraisers, as their jurisdiction was confined to claims connected with the canals. The jurisdiction of the board of audit created by chapter 444 of the Laws of 1876, extended only to the hearing of private claims against the state, except such as could be heard before the canal appraisers, and this was a public and not a private claim. The jurisdiction of the Board of Claims, established by chapter 205 of the Laws of 1883, and which succeeded to the jurisdiction theretofore conferred upon the canal appraisers and the board of audit, was likewise limited to the hearing of private claims against the state. The claim in question was not, therefore, cognizable by any state tribunal prior to the act of 1885, which conferred jurisdiction on the Board of Claims to hear it, and for the first time authorized its presentation and audit. It is, we think, the reasonable and just construction of section 14, article 7, that the limitation prescribed thereby only applies in a case where a tribunal has been constituted by the legislature to hear and determine the claim in controversy, and that the limitation only commences to run from that time. It is clear that, as between individuals, a statute of limitations attaches only from the time when an action to enforce the right asserted may be commenced. In the final clause of the section relating to existing claims they are not

barred if they were " duly presented within the time allowed by law and prosecuted with due diligence from the time of such presentment." This clause was framed with reference to the statutory system for the presentation and the audit of claims against the state which then prevailed. The presentation of claims mentioned in the section did not refer to the common right of every citizen to apply to the legislature for relief, but to statutes enacted under which claims could be " presented " and where the right of prosecution existed. In such cases *laches* in presentment or prosecution might bar the remedy. It cannot be supposed that it was intended that a different rule should apply to claims originating after the adoption of the section, and that as to them the statute was to commence to run in the absence of any tribunal for their adjudication. The case of *Parmenter* v. *State* (135 N. Y. 154) is a direct authority for the proposition that where there is no tribunal before which a claim can be heard the limitation does not attach. In that case the Board of Claims made an award against the state on a contract for legislative printing. The claim was due in 1876, and the statute under which the award was made was passed in 1886. The state interposed the constitutional limitation as a defense. But, as it appeared that during a part of the time required to be counted, the right to prosecute the claim before the state board had been taken away, it was held that the claim was not barred. It is not necessary to inquire whether there is any further answer to the defense based on the lapse of time. It is insisted, on the part of the plaintiff, that under the case of *O'Hara* v. *State* (112 N. Y. 146) the claim had its origin in a legal sense at the date of the passage of the act of 1885. It was held in the case mentioned that where the state has received a benefit in property or services, but under circumstances which afford no legal ground for remuneration, it is not powerless to do justice, and may provide for compensation, although more than six years had elapsed since the benefit was received. In that case the court applied a principle of the law of agency, and held that the cause of

action must be deemed to have arisen when the state, by the law then under consideration, ratified the unauthorized acts of its agents. But without considering whether the decision in the *O'Hara* case is applicable here, and assuming that the demand made by the county of Cayuga became a claim within the purview of the Constitution from the time the expenses were incurred and paid, we rest our conclusion on this point on the ground that when the act of 1885 was passed the claim was not barred under sec. 14 of art. VII, for the reason that up to that time no tribunal existed before which it could be heard and adjudicated.

The appropriation made in the supply bill of 1876 apparently lapsed. The act was revocable. (*People ex rel. C. N. Bank* v. *Board of Supervisors Montgomery Co.*, 67 N. Y. 109.) It does not appear that any formal decision was made by the comptroller on the application of the county. The county, in fact, received no reimbursement under the act, and it was followed in subsequent years by appropriations for the same purpose by the legislature, which were vetoed by the executive. When the appropriation under the act of 1876 lapsed, the claim of the county did not stand as an adjudicated or legal claim against the state.

The point that the act of 1885 did not validate the claim, but referred it to the Board of Claims to pass upon its validity, is, in view of the conceded nature and legislative history of the claim, and the language of the act, untenable. By necessary implication the legislature by the act assumed liability to the extent of the money paid by the county for the purposes mentioned, and it was left to the Board of Claims to fix the amount as should appear on the hearing to be equitable and just. Nor was the act of 1885 an infraction of sec. 10, art. VIII of the Constitution. The provision for reimbursement of the county was not a gift of money of the state, but was intended as a discharge of an equitable obligation, although unenforceable, which in the judgment of the legislature rested upon the state. Nor was the county of Cayuga a corporation within the meaning of that section. The word "corporation"

there used plainly refers to private and business corporations, and does not include governmental agencies such as counties or towns.

We think the award is free from error and it should, therefore, be affirmed.

All concur (HAIGHT, J., in result).

Award affirmed.