(85 App. Div. 145.)

PEOPLE ex rel. ESSEX COUNTY v. MILLER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. TAXATION—EXEMPTIONS—CLAIM OF COUNTY AGAINST STATE—STATUTE OF
    LIMITATIONS.

Const. art. 7, § 6, provides: that neither the Legislature nor any per-
son acting for the state shall allow any claim which, as between citizens
of the state, would be barred by lapse of time, but that the provision
shall not repeal any statute fixing the time within which claims shall
be presented or allowed, nor shall it extend to any claims duly presented
within the statutory time, and prosecuted with due diligence. Laws
1857, p. 205, c. 98, and subsequent acts, provided that certain railroad
lands should be exempt from taxation until September 12, 1883. Laws
1862, p. 411, c. 225, and Laws 1868, p. 774, c. 355, authorized the state
comptroller, in his settlement of the accounts of taxes returned as nonres-
ident, from a county in which some of the lands were situated, and of the
state tax charged to said county, to credit its treasurer with the amount
of all taxes theretofore rejected from the nonresident taxes returned as
unpaid on the ground that the same were exempt as the property of
the railroad, the amount found due the county to be paid it out of the
state treasury. The exemptions from taxation which relator county as-
serted created an equitable claim in its favor against the state, com-
menced about 45 years prior to the filing thereof with the state comp-
troller, and expired about 19 years prior thereto. Under Laws 1862, p.
411, c. 225, relator presented to the comptroller a claim which was allowed
July 30, 1862, and credited to the county, but no further claim was ever
presented prior to the claim involved, which was presented in 1901, and
no other proceeding was ever brought to enforce relator's rights, or to
compel the comptroller or the treasurer of the county to perform the
duties devolving on them, respectively, by virtue of said acts or either
of them. It appeared that if assessments were actually made from time
to time on some of the land, and were not properly returned as unpaid,
it was the fault of the county treasurer in not performing his duty as
required by law. Held that, as the courts were at all times open to pro-
tect relator in compelling the proper public officers to perform the duties
expressly devolved on them, its claim was barred by lapse of time.

Certiorari, on the relation of Essex county, against Nathan L.
Miller, state comptroller. Determination of comptroller confirmed.

Certiorari issued out of the Supreme Court, and attested on the 26th day
of April, 1902, directed to Nathan L. Miller, comptroller of the state of New
York, commanding him to certify and return to the office of the clerk of the
county of Albany all and singular his proceedings, decisions, and actions
upon the claim of the county of Essex, filed with him July 31, 1901, together
with the evidence, documents, papers, records, and opinions considered by
him in his rejection of said claim. The relator is a municipal corporation,
and one of the political divisions of the state of New York.

The Sackett's Harbor & Saratoga Railroad Company was organized pur-
suant to a special act of the Legislature. Chapter 207, p. 321, Laws 1848.
Said railroad company obtained the rights, powers, and privileges stated in
an act entitled "An act to authorize the formation of railroad corporations"
(chapter 140, p. 221, Laws 1848), and the special rights, powers, and privi-
leges stated in said special act, and the modifications and extensions thereof
contained in subsequent acts (chapter 72, p. 84, Laws 1851; chapter 244, p.
534, Laws 1853; chapter 122, p. 194, Laws 1855; chapter 280, p. 574, Laws
1857; chapter 37, p. 45, Laws 1860; chapter 45, p. 67, Laws 1861; and
chapter 90, p. 241, Laws 1862). Among the special powers and privileges
granted to said company was the pre-emption right of selecting and purchas-
ing any quantity of land, not exceeding 250,000 acres, from lands belonging
to the state in the counties of Herkimer and Hamilton. Said company was
authorized to construct and maintain a railroad on the most eligible and direct

route from Sackett's Harbor to Carthage in the county of Jefferson, and from Carthage to the most convenient point of connection with the Saratoga & Schenectady Railroad in the county of Saratoga, and also to construct and maintain certain branch roads and to effect certain other connections. By said chapter 280, p. 574, Laws 1857, the name of said company was changed to the Lake Ontario & Hudson River Railroad Company, and on August 11, 1860 (see chapter 45, p. 67, Laws 1861), the Adirondack Estate & Railroad Company was organized as provided by chapter 37, p. 45, Laws 1860, to take the rights, privileges, franchises, etc., of said Lake Ontario & Hudson River Railroad Company. Previous to 1857 the proposed railroad was located from Carthage to Saratoga, and, as so located, passed through the westerly part of Essex county. In and prior to 1857 the Sackett's Harbor & Saratoga Railroad Company acquired the title to about 140,000 acres of land in Essex county. On the 13th day of March, 1857, chapter 98, p. 205, of the Laws of 1857, was passed, which provides:

"Section 1. From and after the passage of this act, the lands of the corporation 'The Sackett's Harbor and Saratoga Railroad Company,' by whatever name the said corporation may hereafter be lawfully called, or which it shall hereafter acquire on existing contracts, or existing pre-emption rights, shall be free and exempt from all taxation until the twelfth day of September, one thousand eight hundred and seventy-nine; but this section shall not apply to the roadbed or track, nor to lands occupied or used for structures necessary to the working of its road, nor to any lands after the same shall have been sold by said corporation."

Chapter 236, p. 429, of the Laws of 1863 authorized the formation of a railroad corporation "for the purpose of constructing and operating a railroad from some point in the county of Saratoga up and along the valley of the Upper Hudson into the wilderness, in the northern part of this state"; and it further provided that when formed it might purchase, take, and hold lands to the amount of 1,000,000 acres in said wilderness; and also that "all of said lands shall be free and exempt from all taxation until the twelfth day of September, eighteen hundred and eighty three"; also, that "nothing in this act contained shall be construed to make the state liable to pay any county, town, school, or highway tax upon any of said lands hereby exempted from taxation." A corporation was formed pursuant to the general railroad act and said act of 1863, called the Adirondack Company. See chapter 60, p. 84, Laws 1865. The rights and privileges of the Adirondack Company were modified and extended by said chapter 60, p. 84, Laws 1865, and also chapter 250, p. 406, Laws 1865; chapter 718, p. 1617, and chapter 850, p. 2004, Laws 1868; chapter 857, p. 1936, Laws 1871; chapter 864, p. 2044, Laws 1872; and chapter 695, p. 1064, Laws 1873. The said Adirondack Company acquired all the lands, rights, franchises, privileges, and property of said other companies in Essex county. The exemptions from taxation were not extended beyond September 12, 1883. The relator seeks to obtain from the treasury of the state the amount which it alleges is due it under chapter 355, p. 774, of the Laws of 1868, and the acts amendatory thereof, relating to taxes on nonresident lands, mentioned in said acts, relating to the real property of said companies. On July 31, 1901, the relator filed with the defendant a statement of all taxes claimed by it under said acts, and on December 31, 1901, the defendant wholly rejected the same and refused to state said account. This writ is to review said determination of the defendant. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Frank L. Bell (Lewis E. Carr, of counsel), for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for respondent.

CHASE, J. That the acts relating to the several railroad companies, including those exempting their lands from taxation, has re-

sulted in a wrong to Essex county and the inhabitants thereof, cannot reasonably be denied. The acts were undoubtedly passed upon the theory that a railroad could not be built upon the route in said acts proposed without special aid, and that, if a railroad should be there constructed, it would result in a great benefit to the localities traversed by it, and also to the state at large, in the development of its resources and in the sale of its wild lands. It may then have been assumed that, if the railroad should be built as proposed, the exemption from taxes for a limited time of the lands acquired by the company, other than for its roadbed or track, and for structures necessary for the working of its road, would take very little, if any, from the lands that would be taxable if the railroad should not be constructed. If the railroad, as originally contemplated, had been constructed and operated, the net result of all of said legislation might not have been injurious to said county and the owners of taxable lands therein, but, unfortunately for Essex county, the railroad was not constructed in its territory, and it seems now to be conceded that the county and its inhabitants have not received any benefit from the privileges and exemptions granted to said companies.

The power of the state to authorize the payment from the treasury of the state to a county to reimburse it for loss occasioned by reason of a portion of its lands being exempt from taxation under the circumstances here disclosed is not disputed.

In Cayuga County v. State, 153 N. Y. 279-287, 47 N. E. 288, the court, in discussing a claim presented against the state for moneys expended in the trials of convicts for crimes committed in a state's prison in said county, say:

"It is clearly within the scope of legislative power to rectify wrongs of this character; and if, in the opinion of the Legislature, one county or political division has been compelled to bear more than its proper share of taxation, or taxes have been locally assessed and paid which in equity should have been charged upon the whole state, there can be no doubt that, in the absence of constitutional limitation, the Legislature may remedy the injustice, and direct reimbursement out of the treasury of the state."

The defendant insists, however, that the relator's claim cannot be allowed because such equitable claim, as between citizens of the state, would be barred by lapse of time.

The state Constitution (article 7, § 6) provides:

"Neither the Legislature, canal board, nor any person or persons acting in behalf of the state, shall audit, allow, or pay any claim which, as between citizens of the state, would be barred by lapse of time. This provision shall not be construed to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law and prosecuted with the due diligence from the time of such presentment. * * *"

The exemptions from taxation which the relator asserts created an equitable claim against the state in its favor commenced about 45 years prior to the time when the relator filed its claim with the defendant, and expired about 19 years prior thereto. The statute of limitations, however, only applies from the time when an action or proceeding to enforce the right asserted may be commenced. If a tribunal has existed before which the relator's claim could have been deter-

mined and enforced for the limited time stated in our statute of limitations in which an action or proceeding must be commenced upon an equitable claim between citizens of the state, then the comptroller is constitutionally prohibited from allowing or paying the claim of the relator.

By chapter 225, p. 411, of the Laws of 1862, it is provided:

"Section 1. The comptroller of the state of New York is hereby authorized and directed in his statement and settlement of the accounts of non-resident taxes returned ·from the counties of Essex and Warren as non-resident, and of the state tax apportioned on and charged to said county, to credit the treasurers of said counties of Essex and Warren with the amount of all taxes heretofore rejected by the comptroller from the non-resident taxes returned as unpaid for the years eighteen hundred and fifty-seven, eighteen hundred and fifty-eight, eighteen hundred and fifty-nine, and eighteen hundred and sixty, which were so rejected on the ground that the same were exempt from taxation by the provisions of an act entitled 'An act exempting the land of the Sackett's Harbor and Saratoga Railroad Company' from taxation until the sale of the same or the maturity of their bonds, passed March thirteenth, eighteen hundred and fifty-seven, or of an act entitled 'An act to facilitate the completion of the Lake Ontario and Hudson River Railroad,' passed February eighteenth, eighteen hundred and sixty, or of both of said acts, and to cause any amount that may be found due to said treasurers of said counties of Essex and Warren after such credit, and after stating the account of said counties of Essex and Warren, as in other respects provided by law, to be paid to the treasurer of said counties of Essex and Warren, out of the treasury of this state.

"Sec. 2. The comptroller shall hereafter in his annual statements or settlements of the account of non-resident taxes returned from the counties of Essex and Warren, as unpaid, not reject or disallow any part of said taxes so returned on the ground that the lands on which the same are assessed are exempt from taxation under the acts above named in the first section of this act, or either of them; but if said taxes are in other respects legally assessed and returned as unpaid, he shall admit and allow the same to the credit of said treasurers of said counties of Essex and Warren."

By chapter 355, p. 774, of the Laws of 1868, it is provided:

"Section 1. The comptroller of this state is hereby authorized and required to state an account with the treasurers of the counties of Hamilton, Warren and Essex, in which he shall credit said treasurers with the non-resident taxes, including the state tax apportioned to said counties from and including the year one thousand eight hundred and sixty to and including the year one thousand eight hundred and sixty-seven, which were rejected, cancelled or disallowed under the provisions of chapter ninety-eight and two hundred and eighty of the laws of eighteen hundred and fifty-seven or of the acts supplementary thereto or amendatory thereof, and of chapter two hundred and thirty-six of the laws of eighteen hundred and sixty-three and the acts supplementary thereto or amendatory thereof. Any amount which shall be found due upon such stated account, shall be paid to said counties respectively out of the treasury of this state.

"Sec. 2. The comptroller, in his annual statement and settlement of the non-resident taxes, returned from the counties of Hamilton, Warren and · Essex, as unpaid, shall not hereafter reject, cancel or disallow any part of said taxes so returned on the ground that the lands on which the same are assessed are exempt from taxation under the acts named in the foregoing section of this act or of any of them; but if said taxes are in other respects legally assessed, he shall admit the same to the credit of said counties of Hamilton, Warren, and Essex."

Said act of 1868 was amended by chapter 487, p. 1077, of the Laws of 1870, by including therein the counties of Franklin and Clinton, and by changing the time from which the comptroller was authorized

and required to state the account from the year 1860 to the year 1857, and also by including therein new matter, as follows:

"And he shall also credit said treasurers in said account with the amount of the non-resident taxes including the state tax from which the non-resident lands in their respective counties have been exempted by the aforesaid acts; such amount shall be computed upon an assumed valuation of one dollar per acre and at the rate per cent. of such taxes in each of the years aforesaid from eighteen hundred and fifty-seven to eighteen hundred and sixty-seven inclusive."

By chapter 217, p. 264, of the Laws of 1889, said act of 1868 was again amended by striking therefrom the name of the county of Clinton, and by adding, to the time for which the comptroller was directed to credit the treasurer of the relator for nonresident taxes, the words "and from and including the year one thousand eight hundred and sixty-eight to one thousand eight hundred and eighty-three inclusive."

By chapter 515, p. 1272, of the Laws of 1901, there was added to said act of 1868, as amended, another section, as follows:

"Sec. 3. The account herein provided for shall be stated by the comptroller, on or before January first, nineteen hundred and two, and shall include such taxes as may have been lost by the failure of the treasurer of these respective counties to return the same during the period of exemption mentioned in the aforesaid acts, provided however, that such statement shall be made to such counties as shall on or before August first, nineteen hundred and one, file with the comptroller a statement of all taxes claimed to be lost as herein mentioned and a failure to do so on the part of any such county shall exclude it from the provisions of this act."

Neither of the acts relating to the statement of such account have ever been expressly repealed, and, so far as they give to the relator more than one remedy, such remedies are cumulative, and not exclusive.

Under chapter 225, p. 411, of the Laws of 1862, the relator presented to the comptroller a claim, which was allowed July 30, 1862, at $4,725.45, and credited to said county, but no further claim has ever been presented by the relator under either of said acts prior to the claim now under consideration, and no other proceeding of any kind has ever been brought to enforce the rights of the relator under either of said acts, or to compel the comptroller or the treasurer of said county to perform the duties devolving upon them, respectively, by virtue of said acts, or either of them.

It is stated in the relator's petition that after the passage of chapter 355, p. 774, of the Laws of 1868, the relator—

"Returned to the said comptroller many of the taxes which should have been assessed upon said lands previous to the years 1867, and also thereafter did assess such lands, or most of them, and returned them to the comptroller as unpaid taxes or taxes upon lands of nonresidents, and said comptroller rejected, canceled, and disallowed all of the same, and gave to your petitioner no credit on account thereof, except in a few instances and for small amounts, and did charge back to your petitioner the whole amount of taxes so rejected, canceled, and disallowed; that your petitioner pursued the course of assessing such lands and returning them to the comptroller as unpaid taxes, or taxes upon lands of nonresidents, during all of the time the same were so exempt from taxation, and in each instance, for the most part, the comptroller rejected, canceled, and disallowed the same and charged them back to your petitioner; * * * that after the passage of said chapter

217, p. 264, of the Laws of 1889, your petitioner, through its county treasurer presented and returned to said comptroller many of the taxes which had been previously rejected, canceled, and disallowed upon said lands, and the comptroller again either canceled or rejected the same, or failed to give your petitioner credit therefor; and thereafter your petitioner continued to return to the comptroller the taxes assessed upon said lands, as it was authorized to do under chapter 355, p. 774, of the Laws of 1868, and said comptroller did reject, cancel, and disallow the same, and charged them back to your petitioner, and continued so to do while said lands remained free and exempt from taxation."

Chapter 225, p. 411, of the Laws of 1862, as well as chapter 355, p. 774, of the Laws of 1868, and the amendments thereto, expressly recognize assessments actually made on said lands so exempt from taxation. So far as the assessments were actually made and returned to the comptroller as unpaid, there has been at all times not only express authority in the comptroller to state the account thereof with the relator, but it was made his duty so to state said account, and to credit the treasurer of Essex county with the amount of such unpaid nonresident taxes. If assessments were actually made from time to time on some of said land that were not properly returned as unpaid, it was the fault of the county treasurer of said county in not performing his duty as required by law. By chapter 355, p. 774, of the Laws of 1868, as amended by chapter 487, p. 1077, of the Laws of 1870, and the subsequent amendments, the amount which would have been obtained for taxes from lands so exempt from taxation and not assessed, had the same been assessed and collected, is expressly provided for by authorizing and requiring the comptroller to credit the treasurer of the county with the same, "computed upon an assumed valuation of one dollar per acre and at the rate per cent. of such taxes in each of the years." It thus appears that, if public officers expressly charged with well-defined duties had performed such duties, the relator would from year to year have been credited with the full amount of any equitable claim that it had by reason of said exemptions. The courts have at all times been open to protect the relator in compelling such public officers to perform the duties expressly devolved upon them.

We are of the opinion, therefore, that the determination of the comptroller that the claim of the relator is barred by lapse of time is right, and that it should be confirmed, with $50 costs and disbursements. All concur.