Alexander Del Giorno, J.
This claim, based upon the provisions of section 606 of the Correction Law of the State of New York, is submitted to the court pursuant to section 546 of the Civil Practice Act and rule 18 of the Rules of the Court of Claims, for decision as to whether the court has jurisdiction and if so, as to whether and to what extent the facts give rise to liability on the part of the State of New York.
The submitted statement of facts sets forth the following: on or about October 22,1949, one Donald Hugh Snyder received a sentence of two and one half to five years for grand larceny and was committed to Attica State prison. In or about March, 1950, he was transferred to Green Haven State prison in Dutchess County, New York.
On June 10, 1952, Snyder, a prisoner in Green Haven State prison, while in a farm group outside the walls of said prison, escaped.
On or about August 18,1952, Snyder was indicted by a Grand Jury of Putnam County, New York, for murder in the first degree and kidnapping allegedly committed on June 11, 1952, at the Town of Carmel, Putnam County, New York.
On September 15, 1952, the jury returned a verdict of guilty of the aforesaid crimes following trial in County Court, Putnam County, New York.
Claimant necessarily incurred as expenses in connection with the trial and appeal of said Donald Hugh Snyder the sum of $10,313.60.
The notice of intention was filed on March 16, 1953; the claim was filed on September 14,1954 and has not been assigned.
*543 The State resists the claim upon the ground that there is no liability on the part of the State and upon the further ground that the claim was not timely filed.
Research on the part of counsel and the court indicates that this is the first case of its kind where it devolves upon the court to determine if the State of New York is liable for the expense of a trial of a prisoner for a crime or crimes committed, while an escapee, in a county other than that of the prison to which he had been committed, outside the walls, compound or confines of such prison.
The court will consider first the question of liability of the State.
It is the general rule that the expense incurred in the arrest, indictment and prosecution of offenders has been imposed upon the counties where the proceedings were had. (Code Crim. Pro., § 308; County Law, §§ 703, 705, 706; Judiciary Law, § 33$ Board of Supervisors of Cayuga County v. State of New York, 153 N. Y. 279.)
Section 308 of the Code of Criminal Procedure, relating to the arraignment of a defendant without counsel, provides that the court in which the defendant is tried may make certain allowances, which “ shall be a charge upon the county in which the indictment in the action is found, to be paid out of the court fund”. These allowances include payment to the assigned counsel for his services and for his personal and incidental expenses in a ease where the offense charged in the indictment is punishable by death or on an appeal from a judgment of death.. In such case, it is provided by that section that the cost of a daily copy of the testimony shall be a charge upon the county, and that a charge for expert witnesses on behalf of the defendant becomes a charge upon the county in which the indictment in the action is found.
Section 703 of the County Law provides that with the approval of the County Judge of a county in which the indictment has been found for a capital or other crime which presents unusual difficulty upon the trial thereof, the District Attorney may employ counsel to assist him on such trial, and the payment of the reasonable compensation and necessary expenses of such counsel become a county charge.
Section 705 of the County Law provides that the county board of supervisors shall have power to appropriate and set aside a fund for the payment in advance of audit of expenditures incurred by the District Attorney, or Attorney-General acting under section 62 of the Executive Law, necessarily incurred in the prosecution of criminal actions and proceedings arising in the county, which shall be paid by the County Treasurer.
*544 Section 33 of the Judiciary Law provides that the expenses of an investigation or prosecution in any county of a matter or charge connected with contracts between the State and any individual, firm or corporation, if ordered, directed or recommended by the Governor, the Legislature a joint committee of both houses of the Legislature or a committee of either house, shall be borne by the State. It further provides that “ Such expenses shall be paid in the first instance by the county, as the expenses of other criminal investigations or prosecutions therein ”, but that the county shall be reimbursed therefor out of moneys appropriated for such purpose.
In the case of Board of Supervisors of Cayuga County v. State of New York (153 N. Y. 279, 284-285, supra), the court stated: 1 ‘ In this state from an early period the state has assumed the expense of maintaining the judiciary of the state other than judges of local courts, but the expense incurred in the arrest, indictment and prosecution of offenders other than the expense of maintaining the judges has been imposed by statute upon the several counties where the proceedings were had and made a county charge. (1 Bev. Laws, 499 § 17; 1 Rev. St. 385 § 3.) ”
Section 606 of the Correction Law (invoked as the basis of this claim), entitled “ State to pay expenses of trial of prisoners committing crime in correctional institution ’ ’, constitutes an exception to the general rule and provides in subdivision 1 thereof as follows: ‘1 "Whenever any prisoner in any of the state prisons of this state shall be indicted and tried for any offense committed by such prisoner during the time of his imprisonment in any state prison in this state, the expenses of such trial shall be paid by the state.” And in subdivision 2 thereof, in part, as follows: “ In case of the disposition of any indictment, other than for murder in the first degree, against any defendant at the time confined in a state prison of this state for an alleged offense committed by him while so confined, upon which the defendant is without an attorney and, being destitute of means to procure one, has requested the assignment by the court of an attorney to advise him as to his defense, the court or trial judge so assigning an attorney shall, upon disposition of the case by plea or verdict, fix by order a reasonable amount for the compensation of such attorney * * *. The amount so fixed shall be paid by the county treasurer of the county where such assignment was made and the amount so paid shall be a proper charge by such county ag’ainst the state of New York and shall be reimbursed by the state of New York to such county so-paying, upon proper vouchers therefor as hereinafter provided.”
*545 The question thus presented is whether the general provisions of the Code of Criminal Procedure, County Law and Judiciary Law (supra), or the specific excepting provisions of section 606 of the Correction Law are to be applied.
So far as section 606 of the Correction Law is concerned, the court notes that it may not write and supply statutory law, since its function is to interpret the law. It cannot make the law. In the case of McKuskie v. Hendrickson (128 N. Y. 555), the court stated (p. 558): “In construing a statute the legislative intention must be sought in the language used therein contained with such helps as the canons of interpretation allow. But new language * * * cannot be imported into a statute giving it a meaning not otherwise found therein. While the courts may interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a casus omissus, however just and desirable it may be, to supply the omitted provision.”
A ‘1 casus omissus ” is a case omitted from the language of a statute, which appears to have been omitted by inadvertence or because it was overlooked or unforeseen. A case is omitted from the language of the statute when it is not contained within the literal or contextual meaning of such language or cannot be fairly implied therefrom.
The court has no authority to add to the language of the law where a given situation is outside both the terms of the act and the intention of the Legislature in enacting it. If the language of the statute is plain and free from ambiguity, and expresses a single, definite and sensible meaning, words cannot be interpolated.
Section 606 of the Correction Law (L. 1930, ch. 231) derives from the former Prison Law (§ 16) which in turn derived from chapter 389 of the Laws of 1882 (§ 1). Referring to the exception to the general policy that the expense incurred in the arrest, indictment and prosecution of offenders was imposed by statute upon the counties where the proceedings were had, the court, in the case of Board of Supervisors of Cayuga County v. State of New York (153 N. Y. 279, 285-286, supra) said: “An exception to this general policy was created by chapter 389 of the laws of 1882. By that statute the state assumed to pay the expenses of the public prosecution and trial of convicts in the state prisons and in the state reformatory at Elmira for offenses committed by them during their imprisonment, and in cases of convictions for murder in the *546 first degree the expense of executing the sentence and judgment. * * * The reasons which influenced the legislature in enacting the statute of 1882, shifting the burden of enforcing the criminal law in the cases mentioned from the several counties and placing it upon the state at large, are obvious. The state prisons are state institutions established for public and general purposes, in the maintenance of which the whole state is interested. * # * The county in which a state prison may be located has no voice in its management, and it can exercise no police or other supervision over its inmates. # * * The legislature may well have considered that under these circumstances it was just that the burden of the expense of administering the criminal law in those cases should not be borne exclusively by the locality, but should be made a charge upon the state at large. There can be no doubt that the act of 1882 was a legitimate exercise of legislative power. It rests upon the power of taxation ’ ’.
In view of the fact that section 606 of the Correction Law rests upon the legislative power of taxation, and is in derogation of the prevailing rule, it is subject to strict construction. The words in subdivision 1, ‘6 Whenever any prisoner in any of the state prisons * # * during the time of his imprisonment in any state prison in this state ”, and the words in subdivision 2, ‘ ‘ for an alleged offense committed by him while so confined ” connote the legislative intent of referring to the incarceration of the prisoner within the prison walls, compound or confines at the time of the offense.
Here, the crime was committed by Snyder outside of the prison and outside the county where the prison was situated. Although it is true that he was an escapee from the prison at the time of the commission of the crime and was still under the jurisdiction of the prison, nevertheless strict construction of the statute cannot permit the invocation of section 606 so as to consider him a prisoner in the prison who committed the offense during the time of his imprisonment in the State prison or who committed the offense while so confined.
Even in a situation where the trial of an indictment has been transferred from the county in which the indictment was found to some other county, the cost and expense of the trial becomes a charge upon the county where the indictment was found; when under court order the pleadings and issue in a prosecution for a crime or misdemeanor for which no indictment has been found shall have been removed to any other county, because of inability to obtain an unprejudiced or impartial jury in the county of original venue, the expenses *547 of the prosecution becomes a charge upon the county from which the same was transferred. (County Law, § 706.)
The court holds therefore that the general provisions of the Code of Criminal Procedure, County Law and the Judiciary Law (supra) and not the excepting provisions of section 606 of the Correction Law must be determinative of the issue presented. There is no liability on the part of the State of New York for the expense of the trial of the prisoner Snyder in the County of Putnam.
Although the claim submitted is dismissed in accordance with the foregoing, it is the desire of the court to consider in passing the contention of the State that the claim was not timely filed.
Subdivision 4 of section 10 of the Court of Claims Act is governing and provides: “A claim for breach of contract, express or implied and any other claim not otherwise provided for by this section, over which jurisdiction has been conferred upon the court of claims, shall be filed within six months after the accrual of such claim, unless the claimant shall within such time file a written notice of intention to file a claim therefor in which event the claim shall be filed within two years after such accrual.”
As heretofore stated, the jury returned a verdict of guilty of the aforesaid crimes following trial in Putnam County, New York on September 15, 1952. The notice of intention was filed by the claimant on March 16, 1953 and the notice of claim was filed on September 14, 1954.
The State contends that because more than six months had elapsed between the time of the conviction of Snyder and the filing of the notice of intention, the claim cannot be held to have been timely filed. The claimant maintains that because the items of expense were submitted to and paid severally by the Putnam County Board of Supervisors on vouchers between September 16, 1952 and December 22, 1952, the alleged cause of action did not accrue until after September 15, 1952, the date of the filing of the notice of intention.
Since the claim is filed pursuant to the provisions of section 606 of the Correction Law, that law must be further considered by the court. Section 607 provides as follows: “It shall be the duty of the district attorney of any county in which such prisoner shall be indicted and tried to make out a detailed statement under oath of all the necessary expenses incurred by any such trial, including the expenses of procuring witnesses to attend before the grand jury and at the trial of the indictment, and also the amount which shall or may be paid for *548 petit jurors for and during the time occupied by such trial, and forward the same to the comptroller of the state of New York.” Section 608 provides further: “ It shall be the duty of the comptroller to examine such statement and to correct the same by striking therefrom any and all items which are not intended to be paid by the provisions of this section and the two preceding sections of this article, and after correcting such statement as aforesaid, the comptroller shall draw his warrant for the amount of such expenses in favor of the county treasurer of the county in which such trial and indictment shall be had, which sum shall be paid to said county treasurer out of any moneys in the treasury not otherwise appropriated.”
The submitted statement of facts is silent as to whether the District Attorney of Putnam County complied with section 607 of the Correction Law, or whether the Comptroller acted upon such compliance in accordance with section 608 of the Correction Law. Pending audit and rejection by the Comptroller, there can have been no accrual of a cause of action under subdivision 4 of section 10 of the Court of Claims Act, and accordingly the Statute of Limitations cannot be held to have begun to run until such time. Consequently, the notice of intention would have been timely filed.
The claim is dismissed. Let judgment be entered accordingly.