CHESTER S. COLE, Respondent, *v.* THE STATE OF NEW YORK,
Appellant.

The act of 1885 (Chap. 238, Laws of 1885), providing for the hearing and
determination before the board of claims, of the claims of certain persons
while acting as captain and harbor-masters of the port of New York,
and ratifying and legalizing their acts, is not in contravention of the pro-
vision of the State Constitution (Art. 3, § 19), declaring that "the legis-
lature shall neither audit nor allow any private claim or account against
the State," etc. While the said provision prohibits the legislature itself
from auditing or allowing such claims, it recognizes its power to provide
by law for the audit and allowance thereof by some appropriate tribunal.
The power of the legislature in this respect is not restricted to claims
founded on a legal liability enforceable as against an individual by action,

but in special cases, where in its judgment justice requires, it may give power to the board of claims or other tribunals, to disregard defenses strictly legal, and to hear and determine claims against the State, founded in right and justice.

*It seems*, however, as a general rule, and in the absence of express provision, the authority of said board is confined to the allowance of legal claims.

The said act is not violative of the constitutional provision (Art. 3, § 16), declaring that a private or local bill shall embrace but one subject, and that shall be expressed in its title.

Nor does said act contravene the constitutional prohibitions (Art. 3, §§ 18, 24), against the passage of private bills, creating, increasing or decreasing fees, percentages or allowances of public officers during the term for which they were appointed, or granting extra compensation to public officers.

The said act is not in contravention of the Constitution of the United States.

(Argued January 21, 1886; decided March 26, 1886.)

APPEAL from an award of the board of claims made July 31, 1885, in favor of plaintiff, upon a claim presented under the act, chapter 238, Laws of 1885.

The facts, so far as material, are stated in the opinion.

*Denis O'Brien* for appellant. This act of 1885 (Chap. 238) violates section 16, article 3 of the Constitution. (*In re Paul*, 94 N. Y. 507; *City of Watertown* v. *Fairbanks*, 65 id. 588; *In re Blodgett*, 89 id. 395; *In re Lands in Town of Flatbush*, 60 id. 398, 407; *People* v. *Sup'rs of Chautauqua Co.*, 43 id. 21; 1 Dwarris on Statutes, 354; *People* v. *Allen*, 42 N. Y. 378; *Huber* v. *People*, 49 id. 135; *Gaskin* v. *Meek*, 42 id. 186; *Baldwin* v. *Mayor, etc.*, 2 Keyes, 392; *In re Estate of Goddard*, 94 N. Y. 548.) If it be claimed that these claimants are in office under any law not repealed by the act of 1883, then the act of 1885 is in violation of sections 18 and 24, article 3 of the Constitution. (*People* v. *Albertson*, 55 N. Y. 50.) The act of 1885 violates section 19, article 3 of the Constitution. (*In re Murphy*, 24 Hun, 594; *Morris* v. *People*, 3 Denio, 381; *Baldwin* v. *Mayor, etc.*, 2 Keyes, 399; Cooley on Const. Lim. 88, 174; *People* v. *Otis*, 24 Hun, 522; affirmed, 90 N. Y. 48; *Commonwealth* v. *Maxwell*, 27 Penn. St. 444, 456; *Burch* v.

*Newbury*, 10 N. Y. 374; *Bagg's Appeal*, 43 Penn. St. 512; *People* v. *Sup'rs of Kings*, 52 N. Y. 563.) The Constitution furnishes no authority for gratuities, or for raising money by taxation for giving away, or creating by "legislative judgments" an indebtedness or obligation against the State where otherwise there could be none, either legal, equitable or moral. (*Perkins* v. *Inhabitants of Milford*, 59 Me. 315, 318; *Baldwin* v. *Mayor, etc.*, 2 Keyes, 399; 60 N. Y. 398, 406; *Weismer* v. *Village of Douglas*, 64 id. 91; *Guilford* v. *Supervisors*, 13 id. 143.)

*J. Rider Cady* for respondent. The State assumes liability for the result of the negligence of its officers or mere employes, where without such statute its sovereignty would prevent recovery. (*Sipple* v. *State*, 99 N. Y. 284; *Lewis* v. *State*, 96 id. 71.) The whole law-making power of the State is vested in the legislature which is omnipotent, unless restricted by the express or implied provisions of the State or National Constitution. (N. Y. Const., art. 3, § 1; Potter's Dwarris on Statutes, 62; Cooley's Const. Lim. [5th ed.], rule 4, p. 199; rule 5, p. 202; rule 6, pp. 205, 207; *In re Sackett St.*, 74 N. Y. 95; *People* v. *Bradley*, 64 Barb. 228; *Tifft* v. *City of Buffalo*, 82 N. Y. 204.) The practical construction by the legislature in many successive sessions, as shown by its statutory enactments, is entitled to great weight in the interpretation of the Constitution. (*People, ex rel. Williams*, v. *Dayton*, 55 N. Y. 367; *Dermott* v. *The State*, 99 id. 111.) The act of 1885 (Chap. 238) is not unconstitutional, because it legalizes past acts and is in that sense retrospective. (3 Story's Com. on Const., § 1339; Cooley's Const. Lim. [5th ed.] 321; *Burch* v. *Newbury*, 10 N. Y. 520; *Southwick* v. *Southwick*, 49 id. 520; *Bay* v. *Gage*, 36 Barb. 447.) The right of the State of New York to provide police regulations for the waters of the port of New York, provided the State sees fit to pay for their enforcement by a salary and not by a tax upon tonnage or by any other burden upon commerce forbidden by the Federal Constitution, has been judicially sustained as a proper exercise of the police power of

the State. (Cooley's Const. Lim. [5th ed.] 722; *Vanderbilt* v. *Adams,* 7 Cow. 349; *Benedict* v. *Vanderbilt,* 1 Robt. 194; *Mobile* v. *Kimball,* 102 U. S. 691.) All presumptions are in favor of the constitutionality of the statute; an adverse doubtful construction is not sufficient. (*In re N. Y. El. R. R. Co.,* 70 N. Y. 327; *People* v. *Sup'rs of Orange,* 17 id. 235; *People, ex rel. Bolton,* v. *Albertson,* 55 id. 50; *People, ex rel. Hatfield,* v. *Comstock,* 78 id. 356; *Sage* v. *City of Brooklyn,* 89 id. 196.)

RAPALLO, J. This appeal must be determined on the facts found by the board of claims, and the conclusions of law stated by them in their decision, and excepted to by the State. Even if there should be found in the opinions of the members of the board any views in which we do not concur, that would not be ground of reversal, provided we concur in their conclusions of law.

Various points were argued by the learned attorney-general in support of the appeal, to which we will refer, but the main ground upon which he claimed, upon the argument, that the decision of the board of claims should be reversed, was that the act of 1885 (Chap. 238) contravened section 19 of article 3 of the Constitution of this State, which provides that "the legislature shall neither *audit* nor *allow* any private claim or account against the State, but may appropriate money to pay such claims as shall have been *audited* and *allowed* according to law."

This being the principal point urged, we will first give it our attention.

The act of 1885 (Chap. 238, § 1) enacts that the acts and services of Chester S. Cole while acting as captain of the port of the city of New York, and of eleven other persons named in the act, while acting as harbor-masters of the same port, "actually performed by them from and including May 24, 1883, to and including May 24, 1884, are hereby respectively ratified, legalized and confirmed."

Section 2 enacts that "jurisdiction is hereby conferred upon the board of claims to hear, audit *and determine* the claims of

the persons named in section 1 hereof, or of their legal representatives, for a reasonable compensation for such services rendered, and for expenditures incurred by said individuals respectively as acting captain of the port of New York and harbor-masters of the port of New York from and including the 24th day of May, 1883, to and including the 24th day of May, 1884."

It is apparent that the act does not come within the prohibition against the *auditing* by the legislature of any private claim. The act does not purport to audit the claims. This the legislature could not do, however just the claim, or however legal it might be if preferred against an individual. The Constitution prohibits the legislature from exercising the power of *itself* auditing claims, which is in its nature judicial, but provides for the payment of claims which shall have been audited or allowed according to law; thus recognizing the power of the legislature to provide by law for the auditing and allowing by some appropriate tribunal of claims against the State.

It is contended, however, that the act does come within the prohibition against *allowing* claims against the State.

It must be observed that the act of 1885 does not even assume to *allow* those claims. It simply submits them to the arbitrament of the board of claims, a judicial body established for the purpose of passing upon claims against the State. It gives jurisdiction to that tribunal to *hear* and *determine* those claims, but does not dictate how it shall decide upon them. The only limitation upon the power of the board to decide is, that it shall confine itself to a reasonable compensation for services performed and expenses incurred during the year specified. Under the authority conferred by the act, that tribunal, if it deemed the claims unjust, might have rejected them *in toto*. The power to hear and *determine* includes power to reject as well as to allow. Construing the constitutional restriction literally, it was not violated by giving to the board jurisdiction to hear and determine. The enactment was consequently purely legislative and in no sense an exercise of judicial power.

It is contended, however, that the enactment was violative of the spirit and intent of the constitutional prohibition, if not of its letter. That it was intended not merely to prevent the legislature from itself acting judicially in passing upon private claims, but from passing any law under which a private claim could be recognized by or established against the State, however just and equitable it might be, unless it was founded on a legal liability which could be enforced by the courts of justice against an individual or a corporation. We find no such restriction upon the legislative power in the State Constitution. The act establishing the board of claims (Laws of 1883, chap. 205, amended by Laws of 1884, chap. 60) confers upon the board jurisdiction to hear, audit and determine all private claims which shall have accrued within two years, except such as are barred by existing statutes. But that restriction was imposed by the legislature and is subject to modification by it.

The statute of limitations and other legal defenses are, under the general law, available to the State as against a private claim preferred to the board of claims, and as a general rule it has been considered that the authority of the board is confined to the allowance of *legal* claims. But can it be maintained that it would be beyond the power of the legislature, in special cases, where in its judgment justice and right demanded it, to give power to the board of claims to disregard defenses strictly legal? We are unable to find in the Constitution any thing which deprives the legislature of the power of giving to the board of claims, or any other proper tribunal, jurisdiction to hear and determine claims against the State which are founded in right and justice, solely for the reason that they could not be enforced against an individual in the courts. Power to disregard the limitation as to time was exercised in chapter 204 of the Laws of 1884, which enacted that the claim of James Galloway before the board of claims should be exempted from the limitation contained in the act of 1883 (Chap. 205). And by chapter 418 of the Laws of 1884, exclusive jurisdiction was conferred upon the board of claims to audit and allow the claims of owners of diseased cattle slaughtered to prevent the

spread of contagious diseases, though it is by no means clear that for the public safety the legislature might not require the destruction of such cattle without making compensation.

Where the creation of a particular class of liabilities is prohibited by the Constitution, it would of course be an infraction of that instrument to pass any law authorizing their enforcement, but in the absence of any such prohibition there is no good reason why the State should be powerless to do justice, or to recognize obligations which are meritorious and honorary and to provide tribunals to pass upon them. The legislative power is sufficient, even as between individuals, to afford new remedies and to create liabilities not before existing, where they are based upon general principles of justice.

As a general rule money expended or services rendered by one individual for the benefit of another, but without his request or authority, do not create a legal liability on the part of the person benefited to make compensation. But a law which should provide that in every such case, if the party benefited ratifies the acts of the other, and accepts the benefits, he should be liable, would be free from objection, so far, at all events, as it should apply to future transactions. Where the legislature is dealing with the imperfect obligation arising from such a state of facts, it seems to us that it does not transcend its powers by passing a law affording a remedy even in respect to past transactions, where the State adopts the acts and is the party to make the compensation, and no rights of individuals, which are protected by the Constitution, are invaded.

In this point of view. it is material to consider the nature of the claim which the board of claims was empowered by the act of 1855 to hear and determine, and the determination which it made.

The office of captain of the port was created by chapter 436 of the Laws of 1860. Section 1 of that act authorized the appointment of a captain of the port, to hold office for three years, and section 2 prescribed his duties, which were, to prosecute for all violations of law in respect to the harbor of New York; to provide suitable accommodations at the piers, slips

and basins in said harbor, for the lading and discharging of vessels, and to designate anchoring grounds for vessels in said harbor. Section 3 authorized the appointment of eleven harbor-masters to assist the captain in the discharge of his duties. Section 6 provided that all fines and penalties recovered and fees collectible should constitute a fund to be kept by the captain of the port, and section 7 directed that this fund, after deducting office and legal expenses, be divided by the captain of the port between himself and the harbor-masters.

The act of 1862 (Chap. 407), entitled "An act defining and regulating the powers, duties and compensation of the captain of the port and harbor-masters of the port of New York," was a revision of the former acts relating to those subjects. Section 1 provided for the appointment of a captain of the port and eleven harbor-masters. The captain was to hold office for three years and until another should be appointed, unless sooner removed for cause. Section 5 directed that he should collect all the fees, etc., and divide them equally, after deducting expenses, between himself and the harbor-masters. Section 6 prescribed the fees, which were, on all domestic and foreign vessels registering over one hundred and fifty tons, one and one-half cents per ton, and on all other foreign vessels three cents per ton, to be computed upon the tonnage expressed in their registers. Section 14 provided, "the term of office of the present captain of the port and harbor-masters of the port of New York shall continue during the terms for which they were appointed, unless they shall be removed for cause according to the provisions of this act, and the present captain of the port and harbor-masters shall be governed by, and be subject to this act."

It is very clear that the office of captain of the port was not created by the act of 1862, but was recognized by that act as a then existing office. The claimant was appointed under that act, and it was admitted by the State, on the trial before the board of claims, that on the 5th of January, 1880, the claimant was duly appointed by the governor, by and with the consent and advice of the senate, to the office of captain of the port of New York for the term of three years, and until another should

be appointed; that he duly qualified and received his commission, and entered upon the discharge of the duties of his office, and that no successor had been appointed in his place.

In 1876 the Supreme Court of the United States decided, in the case of *Inman Steamship Co.* v. *Tinker* (94 U. S. 238), that so much of the act of 1862 (Chap. 457) as required vessels entering the port to pay a percentage per ton, to be computed on the tonnage expressed in their registers, was a violation of the provisions of the Constitution of the United States, which prohibit the States from laying duties on tonnage. The court at the same time impliedly acknowledge the propriety, and even the necessity of the other provisions of the act of 1862. The means of compensation attempted to be provided for the captain of the port and harbor-masters, by the act of 1862, being thus cut off, the legislature of this State, on the 4th of May, 1883, and while the claimant was still in office, passed the act (Laws of 1883, chap. 357) entitled "An act to provide for the appointment of a captain of the port of New York, and defining and regulating the powers, duties and compensation of said officer, and repealing chapter 487 of the Laws of 1862." By section 1 the governor, by and with the advice and consent of the senate, was authorized to appoint an officer, to be called captain of the port of New York, and to assist him, eleven harbor-masters.

By section 13 the captain was to receive an annual salary of $3,500, and in addition thereto such moneys as should have been necessarily expended for office and legal expenses, not to exceed in any month $200. By section 16 chapter 467 of the Laws of 1862 was repealed, and the offices *created by that act* were abolished. No appointment of captain of the port or harbor-masters appears to have been made under that act of 1883, nor does it appear in the case that any person other than the plaintiff and the harbor-masters then in office was authorized to discharge the duties of those offices. The act contained no provision such as is contained in the act of 1885 (Chap. 238, § 1) declaring these offices vacant. The office of captain of the port was not, as has been shown, created by the act of 1862 (Chap. 467), and as the act of 1883 purported to abolish

only the offices *created* by the act of 1862, the claimant did not regard his office as abolished, and accordingly held over from 1883 to 1884 without interference, so far as appears.

On the trial before the board of claims the board took proofs concerning the services rendered, their necessity and value, and the expenses incurred by the claimant, and found as facts that the claimant, from and including May 24, 1883, to and including May 24, 1884, performed and rendered acts and services as captain of the port of New York, and that a reasonable compensation for such acts and services was the sum of $3,150; that during the same period the claimant necessarily incurred and paid as incident to said acts and services as captain of the port for rent of office, janitor's fees, coal, stationery, and other miscellaneous office expenses, the sum of $410, amounting together to $3,560, no part of which had ever been paid; that by the act of 1885 said acts and services were ratified and confirmed and jurisdiction was conferred upon the board to hear, audit and determine the claim, and on those facts the board found, decided and determined that the claimant was entitled to an award for the sum of $3,560.

The board appear, from these findings and conclusions, to have passed upon the merits, as well as the amount, of the claimant's claim, and whatever may have been said in the opinions of the different members of the board, its conclusion and decision cannot be disturbed, if the board had the power to decide as it did, and the findings disclose no legal error in the decision. One of the commissioners composing the board was of opinion that the offices of captain of the port and harbormasters were not abolished by the act of 1883, and there was at least plausible ground for that view. The claimant was appointed to hold office until a successor should be appointed, and continued to perform his important official duties, and incur expenses therein after May, 1883, until May, 1884, without, so far as appears, any question having been raised as to his right so to act, and no person being appointed in the interim to perform those duties. The means which the legislature had attempted to provide by the acts of 1860 and 1862 for his com-

pensation failed, by reason of being found to be violative of the Constitution of the United States, and the legislature, having these facts before it, in 1885 ratified and adopted the official acts of the claimant, and gave jurisdiction to the board of claims to pass upon his claim for a reasonable compensation and the amount thereof. Even if it should be conceded that the claim was not one which would have been enforced in an action in the courts, if the services had been rendered to an individual, yet it had a basis in justice and equity, and, in our judgment, it was within the constitutional power of the legislature to confer jurisdiction on the board of claims to take cognizance of and determine it.

The further objection is taken that the act of 1885 violates section 16 of article 3 in embracing two subjects, viz., the legalizing of the acts of the captain of the port and harbor-masters, and the subject of conferring jurisdiction on the board of claims to hear and determine their claims, and the provision declaring from what date their offices should be deemed vacant.

We think that even if the act is regarded as local or private, all these subjects are sufficiently connected to authorize their being embraced in one act. They all relate to the captain of the port and harbor-masters of the port of New York, and if the act had borne that title it would be unobjectionable under the decision of this court in *Board of Water Commissioners* v. *Dwight*, \*decided December 8, 1885. It legalizes the acts of those officers during a specified period, authorizes the submission of their claims for compensation during the same period to the board of claims, and declares from what date their offices shall be deemed vacant. It was not necessary to pass a separate act for each of these provisions.

The objection that the act of 1885 is a private or local bill creating, increasing or decreasing fees, percentages or allowances of public officers during the term for which they were appointed, or that it grants extra compensation to public officers, and therefore void under sections 18 and 24 of article 3, is in our opinion untenable. The act does not do either of the prohibited things. It does not grant any extra compensation or

increase fees, percentages or allowances to officers during the term of office for which they were appointed. The whole theory of the counsel for the State is that during the time the services were rendered the claimant was out of office and his office abolished. It grants no extra compensation. It merely gives jurisdiction to hear and determine a claim for reasonable compensation for services rendered in a case where the compensation attempted to be provided by law failed by reason of the invalidity, under the Constitution of the United States, of the provision for such compensation, and the claimants had consequently rendered beneficial services, accepted and ratified by the legislature, without any valid provision for their compensation. It does not come within the evils at which the constitutional prohibition was aimed.

The point taken before the board of claims, that the act of 1885 was in contravention of the Constitution of the United States, was not insisted upon on the argument in this court and has no foundation. The only provision of the act of 1862, which was subject to that objection, was that which required vessels loading or unloading in the port of New York to pay a certain percentage per ton, to be computed on the tonnage expressed in their register or certificate of enrollment. (*Inman S. S. Co.* v. *Tinker*, 94 U. S. 238.)

The award of the board of claims should be affirmed, with costs.

All concur, except DANFORTH, J., dissenting.

Award affirmed.