(97 App. Div. 276.)

## WHEELER v. STATE.

(Supreme Court, Appellate Division, Third Department. September 20, 1904.)

1. STATES—PUBLIC LANDS—SALE—FAILURE OF TITLE—CLAIM BY PURCHASER —SPECIAL STATUTES—EFFECT.

After sale on behalf of the state of certain wild lands, it was discovered that the lands were within 20 miles of Dannemora State Prison, so that their sale was prohibited by Laws 1889, p. 520, c. 382, § 67, and for this reason the Forest Commission revoked its action in recommending the acceptance of a bid. Afterwards Laws 1894, pp. 369, 370, cc. 208, 209, were enacted, reducing the prohibited radius to 10 miles, ratifying the previous sale, and authorizing the execution of a deed. A deed was executed, expressly providing that it should not operate as a warranty of title, and later a part of the land was recovered from the purchaser in an action in which it was shown that the sale at which the state acquired its pretended title was invalid. In view of this, Laws 1900, p. 1633, c. 767, § 1, was enacted, conferring on the Court of Claims jurisdiction to determine the claim of the purchaser against the state and to make an award in favor of the purchaser. Held, that this act au-

thorized the Court of Claims to disregard the defense of lack of warranty, and justified a judgment in favor of the purchaser.

2. SAME—CONSTITUTIONALITY.

The act was constitutional.

Parker, P. J., and Chase, J., dissenting.

Appeal from Court of Claims.

Proceeding by William W. Wheeler against the state of New York. From a judgment in favor of defendant, claimant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

John P. Kellas, for appellant.

John Cunneen, Atty. Gen., and S. S. Taylor, Deputy Atty. Gen., for the State.

HOUGHTON, J. Prior to the 4th day of January, 1893, the State Land Board advertised for sale in behalf of the state a tract of 2,950 acres of wild lands and invited bids for the same. Claimant's bid of $5.57 per acre for the entire tract was the highest, and on that day the Forest Commission recommended that claimant's offer be accepted. It was subsequently discovered, however, that the lands were within a radius of 20 miles of Dannemora State Prison, and by section 67, chapter 382, p. 520, of the Laws of 1889, were prohibited from sale, and for that reason the Forest Commission on the 26th day of January, 1893, revoked its action and refused to sanction the sale. The matter being brought to the attention of the Legislature, and for the evident purpose of meeting the situation which had arisen, by chapter 208, p. 369, of the Laws of 1894, the prohibited radius from the prison was reduced to 10 miles, and immediately chapter 209, p. 370, of the Laws of 1894 was enacted, providing that the acts of the Forest Commission in 1893 in relation to the sale of these lands be ratified and confirmed, and the Commissioners of the Land Office authorized to grant the application for such sale and to cause to be executed the necessary deeds of transfer to the purchaser upon the payment of the purchase price bid, adding a provision that no timber should be cut on the lands within a distance of one-half mile of a lake situated therein. Thereafter the Forest Commission, on the approval of the Attorney General, revived the resolution which it had rescinded, and the same was properly approved. On the 21st of June, 1894, the claimant paid $15,540.30 into the state treasury, being the full purchase price at the price per acre bid by him, and a patent was issued to him, not only without warranty, but containing an express stipulation that the conveyance should "in no wise operate as a warranty of title." It was subsequently discovered that the prohibition with respect to cutting timber about the lake in question had been omitted, and the claimant surrendered his patent and received another, containing that covenant, but in all other respects similar to the former. Thereafter one Andrus and another brought action to remove claimant's patent as a cloud on the southeast quarter of lot 87, one of the lots embraced in claimant's purchase, and one Turner brought an action of the same character with respect to the northeast quarter of the same lot. It appeared upon the trial of these actions that the east half of lot 87, although advertised for sale at public

auction for unpaid taxes, was not in fact sold, but that, immediately upon the description being read, without giving an opportunity for bids, the lands were withdrawn from sale upon the announcement that they belonged to the state. This pretended sale, upon which the Comptroller executed a deed to the people, being the only source of title in the state, was declared void by the courts, and the lands were restored to the original owners. The claimant had paid the state for the lands thus taken from him $1,782.40, and also paid the costs and his attorney's fees and expenses in the two actions. This state of affairs being brought to the attention of the Legislature, it enacted chapter 767, p. 1633, of the Laws of 1900, reading as follows:

"Section 1. Jurisdiction is hereby conferred upon the Court of Claims to hear, audit and determine the claim of William W. Wheeler against the state of New York, for damages sustained by him in consequence of the cancellation, annulling and setting aside of letters patent executed to him by the people of the state of New York, so far as the same relate to the east half of lot eighty-seven, township eight, Old Military Tract, in the town of Belmont, in the county of Franklin, and to make an award and render judgment therefor against the state of New York and in favor of said claimant."

It is by virtue of this act that claimant can recover, if at all, the moneys which he paid for, and the expenses which he incurred in defending his title to, the lands taken away from him. His letters patent not only contained no warranty of title, but expressly stated that they were without warranty. Nor can it be said, as is insisted by the claimant, that the act of the Legislature directing the Land Board to make conveyance gave him any better title than his letters patent finally gave him. Even if the Legislature by an act could transfer title, it did not assume to do so in this instance, but only directed the Land Board to furnish to claimant, upon his paying the stipulated price, the evidence of his title in the form of a patent, which the board did furnish, and it contained an express refusal to warrant.

The learned Court of Claims concluded that the enabling act was insufficient to permit a recovery, and dismissed the claim. In this we think the court was in error. The facts are peculiar, and strong equities in behalf of the claimant are presented. The state had, in effect, manufactured a title to the east half of lot 87, apparently good on its face, but confessedly bad when the circumstances of its acquisition were disclosed. The lands were advertised for sale for unpaid taxes. The Comptroller had executed his deed in proper form to the people. Upon the record, therefore, the plaintiff had a right to assume that the people had good title, and that he could well pay his money without warranty. But when the manner of acquisition of the title was disclosed, and it was shown that there was no sale, and that immediately upon the property being reached in the order of sale it was withdrawn, upon the announcement that it belonged to the people, without permitting any one to bid thereon, the falsity of the title was obvious; but the claimant had no means of knowing these facts until they were disclosed in the actions brought against him. It then stood that the state by its own improper act had created an apparent title which did not exist, and taken the claimant's money for lands which he could not hold. The Legislature, knowing this and the part which it had taken in inducing the purchase by reducing the limit to 10 miles from

Dannemora Prison and directing consummation of the sale, and realizing the inequity and unjustness of the state retaining the purchase price which the claimant had paid, passed the enabling act under which the claim was presented. It could not have been the object of the Legislature to still further harass the claimant and make him additional expense in a futile presentation of his claim. Its obvious intention was to admit the justness of his claim, and to give power to the Court of Claims to disregard the strictly legal defense of lack of warranty in title, and to provide for its audit and allowance by a proper tribunal. This it had the power to do without infraction of the Constitution. It did not assume by the act to audit or allow the claim. It simply recognized it as one founded in justice and right to such an extent that in fairness the technical defense of lack of warranty should not be interposed. On such a basis it directed that the claim be heard before the tribunal established by law for the determination of claims against the state. Such action on the part of the Legislature has repeatedly been held within its powers. Cole v. State, 102 N. Y. 48, 6 N. E. 277; O'Hara v. State, 112 N. Y. 146, 19 N. E. 659, 2 L. R. A. 603, 8 Am. St. Rep. 726; Cayuga County v. State, 153 N. Y. 279, 47 N. E. 288; American Bank Note Company v. State, 64 App. Div. 223, 71 N. Y. Supp. 1049.

Cole v. State, supra, was an action to recover for services performed, without authority, in and about the port of New York. The Legislature passed an act ratifying and confirming the acts of the claimant, and conferring jurisdiction upon the Board of Claims to hear, audit, and determine. In the course of the opinion confirming the award, Rapallo, J., says:

"The statute of limitations and other legal defenses are, under the general law, available to the state as against a private claim referred to the Board of Claims, and as a general rule it has been considered that the authority of the board is confined to the allowance of legal claims. But can it be maintained that it would be beyond the power of the Legislature, in special cases, where in its judgment justice and right demanded it, to give power to the Board of Claims to disregard defenses strictly legal? We are unable to find in the Constitution anything which deprives the Legislature of the power of giving to the Board of Claims, or any other proper tribunal, jurisdiction to hear and determine claims against the state which are founded in right and justice, solely for the reason that they could not be enforced against an individual in the courts."

The case of Cayuga County v. State, supra, involved a claim for expenses incurred in trials for crimes committed by prisoners in Auburn Prison. There was no obligation on the part of the state to reimburse the county for such expenditures, but the Legislature passed an act permiting the county to present its claim and authorizing the Board of Claims to hear and audit it. In its opinion the court says:

"By necessary implication the Legislature by the act assumed liability to the extent of the money paid by the county for the purposes mentioned, and it was left to the Board of Claims to fix the amount as should appear on the hearing to be equitable and just. Nor was the act of 1885 (Laws 1885, p. 737, c. 428) an infraction of section 10, art. 8, of the Constitution. The provision for reimbursement of the county was not a gift of money by the state, but was intended as a discharge of an equitable obligation, although unenforceable, which in the judgment of the Legislature rested upon the state."

A claim for printing done without authority from a proper state official was involved in the case of American Bank Note Company v. State, supra. The enabling act was there held to be a waiver by the Legislature of the defense of lack of authority on the part of the state official, and a recovery by the claimant was directed.

In Wrought Iron Bridge Company v. Town of Attica, 119 N. Y. 204, 23 N. E. 542, O'Brien, J., says:

"The principle that claims supported by a moral obligation and founded in justice, where the power exists to create them, but the proper statutory proceedings are not strictly pursued, or for any reason are informal and defective, may be legalized by the Legislature and enforced either against the state itself or any of its political divisions, is, we think, now well settled."

If it was lawful for the Legislature to enact that technical defenses to claims against the state should be waived with respect to labor performed, moneys expended, and materials furnished for its benefit, because those claims were founded in justice and right, it certainly was not unlawful to direct the waiver of the technical defense of lack of warranty to a claim for money which the state held, the consideration for the payment of which had failed. It could direct the waiver of such a defense, as well as it could lack of authority to contract or the statute of limitations. The one would be as complete a defense as the other. None of the enabling acts in the cases cited, except that in the Cayuga County Case, are stronger than the one under consideration, and some of them are much less emphatic.

The court below in its opinion states that it deemed itself controlled by the decision of this court in Killam v. State, 64 App. Div. 243, 71 N. Y. Supp. 1041. That case is much different from the present one. Killam did not deal with the state, and it had none of his money. The tax title had failed, and he had taken title through the purchaser without warranty. He had no claim, legal or equitable, against the state. If any existed, it was with his immediate grantor, to whom he had paid the purchase price.

The judgment should be reversed, and a new trial granted, with costs of appeal to appellant.

SMITH and CHESTER, JJ., concur.

CHASE, J. I dissent. The patent received was presumably in accordance with the terms of sale under which the claimant purchased. There has never been a suggestion to the contrary. The claimant is not entitled to a repayment of the consideration by reason of any contract, express or implied. Before the passage of the act (chapter 767, p. 1633, Laws 1900) the claimant was wholly unable to establish a claim against the state, even if the state failed to interpose a defense thereto. The act, therefore, was not for the purpose of avoiding a legal, but unconscionable, defense, but, as construed by a majority of this court, it in effect is to establish and allow a private claim against the state where none had theretofore existed. It is much more than an act to avoid a technical defense or cure some irregularity in procedure. I am opposed to a determination in favor of the authority of the Legislature to create and allow a claim against the state whenever it is

thought that there is some general equity, although not amounting to an enforceable equity, therefor. Under the act as construed, the Court of Claims is a mere accountant.

PARKER, P. J., concurs in this dissent.