Morschauser, J.
In 1898 the hoard of supervisors of the county of Columbia passed a resolution as follows :
“ Resolved, That such highway leading from New Lebanon, N. Y., to Pittsfield, Mass., from the State line, 6,500 feet westerly in the Town of New Lebanon, N. Y., or section thereof so approved by the State Engineer and Surveyor, September 17th, 1898, shall be constructed under the provisions of Chapter 115, laws of 1898.”
Under chapter 115 of the Laws of 1898 the counties *312 were authorized to build roads with state aid under the supervision, control and direction of the state highway department, and thereafter such roads were to. be maintained and kept in repair-by the county, except when a bridge having a span of over five feet was constructed or repaired on such road, the obligation to build, maintain and repair such bridge was upon the town wherein such bridge was located. This statute, chapter 115 of the Laws of 1898, was amended from time to time, and was finally repealed by the Highway Law, chapter 30 of the Laws of 1909, constituting chapter 25 of the Consolidated Laws. All of the county highways were placed under the supervision and control of the state, and the obligation to pay for the repairs of the same, except for bridges having a span of more than five feet, was upon the state, and provisions were made for the counties and towns wherein such highways were located, to pay a proportionate share of the maintenance and repair of such roads.
Under the resolution of the board of supervisors of Columbia county, above -mentioned, and passed in 1898, a highway was constructed pursuant to chapter 115 of the Laws of 1898, which was over the Lebanon Mountain, and in the construction of said highway there was an iron bridge known as the “ Shaker Bridge,” which was part of the highway of the Lebanon Mountain road. Thereafter this bridge, which had a span of over five feet, was found to be unsafe, and the town of New Lebanon, the claimant, and the state highway department, entered into an agreement whereby the bridge was to be eliminated. The bridge spanned a ravine, at the bottom of which flowed a small stream. The agreement between the state highway department and the town, entered into between them,' *313 provided that the town was to build a culvert of concrete with a throat sufficiently large to allow the stream to flow through it without damming the waters, which culvert was to be built at the bottom of the ravine, and the state was to make the fill above the culvert up to the level of the road, thereby connecting the road at the place where the bridge was removed, so as to make it one continuous piece of road.
The town entered into a written contract with a contractor, a Mr. Edward Crowe, for all the work to be done in removing the bridge, building the culvert, and making the fill, the contract stating as follows, section 8: “ It is mutually understood between the contractor and the officers of the town making this contract on behalf of said town, that the necessary teaming and hauling of dirt, and labor.for the fill, which is included in the contract price of Twenty-five hundred dollars, is to be paid for by the State upon vouchers furnished by the Department of Maintenance of the State Highway Commission in accordance with the usual rules and regulations as promulgated and enforced by the Department of the Highway Commission. And that all work done is to be approved by the inspector assigned to inspect the work by the said State Highway Commission, or the said Department of Maintenance.”
This contract was submitted to the state highway commission and approved by them. This contract was made in pursuance to a verbal arrangement made between the supervisor of the town and an official of the state highway department that the town was to remove the bridge, build the culvert, and the state to make the fills.. The contractor thereupon entered into the performance of his contract and removed the bridge, built the culvert and made the fill, and completed the work. Under the directions of the state *314 highway department, and upon their approval, the town paid the contractor the full sum of $2,500 for the work. The town thereupon presented a claim to the state highway department for the $500 which was the amount paid by the town to the contractor for the fill, and the highway department audited and approved the claim, and requested the comptroller to issue a warrant for the payment thereof, and delivered the same to the supervisor of the town, who presented the same to the comptroller of the state, requesting him to draw his warrant for that amount, payable to the town, upon the state treasurer. The comptroller refused to issue such a warrant, claiming that the highway department had no authority to make such a contract with the town, and that no obligation existed on the part of the state to repair the highway at the point where the bridge was located, on the ground that it was an obligation' upon the town, the bridge having a span of more than five feet; and that, therefore, the obligation was on the town, and not on the state, and claiming that the highway department could not, for that reason, make a contract which was binding on the state.
The claimant now files a claim against the state, and the matter came up for trial in this court. The state in defense thereof asserts that the contract between the town and the highway department was void, for the reason that no obligation existed on the state to make a fill where a bridge had formerly existed, and that the obligation to do so rested with the town; and on the further ground that the Court of Claims has no jurisdiction to hear the claim for the reason that the town, being a municipal corporation and a political subdivision of the state, has no authority to sue the state; and on the further ground that the claim being a public one, the Court of Claims has no jurisdiction to hear *315 it, as section 264 of the Code of Civil Procedure limits the jurisdiction of the Court of Claims to the hearing of private claims.
Under the Highway Law as it existed at the time this contract was made, the state was required to maintain, repair, control and supervise such highway, and could compel counties and towns to pay a certain pro rata share of the expense in so doing. Except when a bridge having a span of over five feet was to be built or repaired on such road, the town wherein the same was located was obligated by statute to do so. We think the department and the town having entered into a contract to eliminate the bridge and place a culvert and fill in its place, that such agreement was binding on the state. The work to be done was not to repair or rebuild the bridge (which would have been an obligation on the part of the town), but it was to remove the bridge and make the road continuous so as to improve the highway and remove the obligation which existed on the part of the state of supervision of the bridge, and in a great measure make the highway much safer and better for travel; and we have reached the conclusion that such a contract between the department and the town was binding upon the state.
But the state also asserts that this court has no jurisdiction to hear such a claim, and that the towm has no capacity to sue the state. It is a well-settled principle of la-w that the state in consequence of its sovereignty is immune from prosecution in its own courts and can only be sued by its own consent, and only for such liabilities which it chooses to assume. See Garr v. Bright, 1 Barb. Ch. 157; Kiersted v. People, 1 Abb. Pr. 392; Coster v. City of Albany, 43 N. Y. 399; People v. Dennison, 84 id. 272; Rexford v. State of New York, 105 id. 229; Locke v. State of New York, *316 140 id. 480; Smith v. State of New York, 227 id. 405; Cunningham v. Macon & Brunswick R. R. Co., 109 U. S. 446; Board of Liquidation v. McComb, 92 id. 351; Briscoe v. Bank of Kentucky, 11 Pet. 257; Beers v. State of Arkansas, 20 How. (U. S.) 527; People v. Miles, 56 Cal. 401; Bloxham v. Florida Central & P. R. R. Co., 35 Fla. 625; Williamsport Railroad v. Commonwealth, 33 Penn. 288. Statutes in derogation of the sovereignty of the state must be strictly construed, and a waiver of liability must be clearly expressed. See Litchfield v. Bond, 186 N. Y. 66; Smith v. State of New York, 227 id. 405.
Under the earlier practice whenever a claim existed against the State which could not be paid in the usual course of its business, and by provisions made therefor, the state authorized the payment thereof by special act. This method was found to be very unsatisfactory, and from time to time the legislature by enactments created tribunals to hear, try and determine such claim. The history of the various tribunals created by legislative enactment to hear and determine such claims, was clearly stated by Judge Cullen in writing the opinion of People ex rel. Swift v. Luce, 204 N. Y. 483, as follows: “ The history of the disposition of private claims against the state is as follows: The state, being sovereign, is immune from suit except in the Supreme Court of the United States at the instance of another state under the provisions of the Federal Constitution. Claimants had, therefore, to rely on the sense of justice of the legislature. By chapter 321 of the Laws of 1870 jurisdiction was conferred on the canal appraisers to hear and determine certain classes of claims arising from the use and management of the canals, but the great mass of claims against the state were submitted to and passed on directly by the legislature, which provided for their *317 payment. By an amendment to the Constitution made in 1874, which is now reproduced in section 19 of article 3 of the present Constitution, it was enacted that the legislature ‘ shall neither audit nor allow any private claim or account against the State, but may appropriate money to pay such claims as shall have been audited and allowed according to law.’ Thereupon it became necessary, unless the state was either to violate its obligations or was willing to surrender its immunity and subject itself to suits in the courts like other litigants, for the legislature to create some board or tribunal which could pass upon and audit claims against it. Hence, in 1876 (by ch. 444) it was enacted that the comptroller, secretary of state and state treasurer should constitute a state board of audit with power to hear all private claims and accounts against the state, except such as were then heard by the canal appraisers, to administer oaths and take testimony in relation thereto, to determine the justice and amounts thereof, and to allow such sums as should be equitable. The board was authorized to establish rules as to the forms and methods of procedure before it. In 1883 (by ch. 205) the canal appraisers and the state board of audit were abolished and the Board of Claims constituted, to consist of three commissioners to be appointed by the governor and to hold office for the term of six years. The board was given jurisdiction to hear, audit and determine all private claims against the state, and it was also enacted that it should have jurisdiction of all claims on the part of the state against any person making a claim against the state and should determine such claims or demands both on the part of the state and the claimant; and if it found that the demand of the state exceeded that of the claimant, it should award such excess in favor of the state against the claimant. *318 It will thus he seen that the jurisdiction conferred on the Board of Claims was of the broadest character. It included every private claim against the state and authorized the determination of set-offs or counterclaims by the state against the claimant.
“ Chapter 36 of the Laws of 1897 enacted that the Board of Claims should be continued and thereafter known as the Court of Claims. The act provided for the procedure by and before it and assimilated the procedure to that in regular courts, but it did not add one iota to the jurisdiction formerly possessed by the Board of Claims. Indeed, it was impossible that the jurisdiction of the Board of Claims, so far as the subject-matter of private claims by or against the state, could be increased, for already it was universal. Jurisdiction to determine public claims against the state was not conferred upon the Board of Claims (Bd. Suprs. of County of Cayuga v. State of N. Y., 153 N. Y. 279), nor was it ever conferred on the Court of Claims, except in some special case by act of the legislature. One must not be misled by the fact that special laws were passed referring cases to the Board of Claims. Such were not rendered necessary because of any limitation on the jurisdiction of that board, but because such claims were not legal ones, but rested solely on morals and equity, and, therefore, were not enforceable until recognized by the legislature. Examples of cases of this character are to be found in Cole v. State of N. Y. (102 N. Y. 48) and O’Hara v. State of N. Y. (112 id. 146). By chapter 692 of the Laws of 1906 the terms of the judges then in office were extended ten years from the date of the act, and it was provided that they should continue in office until their successors were appointed and qualified.
“ The statute of 1911 (Ch. 856), already mentioned, *319 amended section 363 of the Code of Civil Procedure so that there ivas no longer any authority for a Court of Claims, but the Board of Claims was continued to be composed, instead of judges, of three commissioners. The judges of the Court of Claims, then serving as such, were to be known as commissioners. Their terms were abrogated and their successors directed to be appointed by the governor within sixty days after the passage of the act.”
Upon an examination of these various statutes conferring authority upon tribunals to hear, try and determine claims aganst the state, the legislature limited the jurisdiction at all times to the hearing of private claims. Prior to the inhibition in the Constitution, section 19, article III, which declares “ The legislature shall neither audit nor allow any private claim or account against the State, but may provide money to pay such claims as shall have been audited and allowed according to law, ’ ’ the legislature was permitted to pass such private or public bills, and frequently did pay claims which in equity and justice the State should so do. But after the Constitution was amended by section 19, article III, the legislature could no longer allow or audit any private claim, and therefore created a tribunal to hear, try and determine private claims against the state, reserving the power to audit, allow or pay public claims which it possessed prior to the change in the Constitution, section 19, article III. Section 19, article III, first became a part of the Constitution by the amendment of 1874. Judge Andrews, in writing the opinion in the case of Cayuga County v. State of New York, 153 N. Y. 279, 287, said: “Among the constitutional objections urged to the act is one based upon section 19, art. III. This section declares that ‘ The legislature shall neither audit nor allow any private claim or account against the state, but may appro *320 priate money to pay such claims as shall have been audited and allowed by law.’ It is a decisive answer to this objection that the claim of the county of Cayuga, recognized by the act of 1885, and referred to the Board of Claims, was not a ‘ private ’ claim within the purview of the section. This section first became a part of the Constitution by the amendment of 1874. It was intended to remedy the manifest evils of special legislation in the interest of private claimants, and to deprive the legislature of the power to pass laws which directly, and of their own force, should allow and fix the amount of private claims against the state. The practice which had before prevailed was subject to great abuses. The legislature could not, in the majority of eases, act intelligently upon the subject, and was subject to influences which had led, and were likely to lead, to acts of legislation depleting the public treasury for the benefit of claimants whose claims had no foundation in law or equity. The section interposed an obstacle in the path of persons asserting unfounded claims against the state. It required their audit and allowance by some officer, board or tribunal designated by law, before the legislature could make an appropriation for their payment. Private claims against the state, up to the adoption of this section, mainly arose out of the acts of the state in appropriating lands for the canals, and upon contracts for their construction and improvement, or for injuries resulting to persons or property from the canals or their management. Jurisdiction to hear claims of this general character had from time to time been conferred upon the canal appraisers and the canal board. (1 Rev. St. 225; 3 id. 147; Laws of 1870, chap. 321.) But the legislature was nevertheless open to claimants, and statutes were passed from time to time directly granting relief. It is plain, in view of contemporary his *321 tory, that the words ‘ private claims ’ in section 19, art. Ill of the Constitution, were intended to designate claims of the same general character as those which arose in connection with the administration of the canal system; that is to say, claims made against the state in behalf of a private interest as distinguished from claims of a public character. The word ‘ private ’ is descriptive, and was used as the antithesis to the word ‘ public; ’ and, by necessary implication, claims of a public nature are not included within the inhibition. That the claim made by the county of Cayuga for reimbursement was a public, as distinguished from a private claim, does not, we think, admit of question.”
Section 264 of the Code of Civil Procedure prescribes that the Court of Claims possesses all the powers and jurisdiction of the former Board of Claims. It also has jurisdiction to hear and determine a private claim against the state, etc. The act creating the Board of Claims, chapter 205 of the Laws of 1883, limited the jurisdiction of this tribunal to hear, audit and determine all private claims against the state; so that the law as it now stands gives jurisdiction to the present Court of Claims to hear private claims against the state, and whenever a public claim exists against the state, the legislature still retains control and jurisdiction to audit and allow the same.
The town being a municipal corporation of the state, with certain governmental and political powers and duties, must necessarily exercise all its functions, duties and obligations in a public manner, and a claim made by it against the state must necessarily be a public one rather than a private one.
*322 In the ease of Cayuga County v. State of New York, supra, the county of Cayuga filed a claim against the state with the Board of Claims, to reimburse it for expenses incurred in the trial of convicts in the Auburn State Prison. The legislature, by chapter 428 of the Laws of 1885, conferred jurisdiction on the Board of Claims to audit the claim of the county, and the state asserted that this act was in violation of section 19, article III of the Constitution, which prohibited the legislature from auditing or allowing any private claims against the state; and it was there held that such a claim was a public one, and not a private one, and was, therefore, not in conflict with any restrictions or inhibition of the Constitution, section 19, article III.
In People ex rel. Swift v. Luce, 204 N. Y. 478, it was held that tribunals that were created from time to time by the legislature for the purpose of hearing and determining claims against the state, were quasi judicial bodies established to hear, determine and audit private claims against the state, and were not a court or judicial body within the terms or the meaning of the judiciary article of the State Constitution, but only an auditing board or quasi judicial body with limited jurisdiction.
Therefore, as the claim presented in this case was by a municipal corporation, it must be held to be a public claim rather than a private one, and as such the Court of Claims has no jurisdiction, under section 264 of the Code, to hear, try or determine the same.
The state also in its defense asserts that the town has no capacity to sue the state, and that a municipality like a county, town, city or village, being an integral part of the state itself, cannot maintain an *323 action against the state. Municipalities are subdivisions of the state and are established for the purpose of more conveniently performing the governmental functions primarily resting upon the state than their respective territorial jurisdiction. And the state creating municipalities, defines their powers and duties. This question has been settled and decided in the case of County of Albany v. Hooker, 204 N. Y. 1. In that case the county brought an action against S. Percy Hooker and others, composing the state commission of highways, to restrain the expenditure of state moneys on highways. The county brought what is commonly known as a taxpayers’ action, and in that case the court held that there was no authority under the taxpayers’ act for a municipality to maintain such an action, but also decided that a muneipality cannot maintain an action against the state of whose sovereign power they are part, or against state officers who are expressly charged with the performance of sovereign power. Judge Chase, writing the opinion, says: “ The state, in the exercise of its sovereign power, has done so in part by dividing its territory into counties and imposing upon them certain governmental and political powers and duties. It has been and is a convenient way of exercising its sovereign authority. In the exercise of such powers and in the performance of such duties the counties are mere agents of the state and component parts of it. They are not, in the exercise of such authority, subject to suit any more than the state itself, and certainly they cannot maintain an action against the state of whose sovereign power they are a part, or against state officers who are expressly charged with the perform *324 anee of sovereign power. Counties, in the exercise of their powers and" duties as component parts of the state, have acquired real and personal property and have exercised certain corporate powers that are distinct from their governmental and political powers and duties. In the exercise of such corporate powers they have, because of lack of express statutory recognition as corporations, been treated as quasi corporations and have sued and been sued as such; but authority to sue and be sued as quasi corporations has been restricted to matters pertaining to the county in its corporate capacity as distinguished from its governmental and political capacity.”
Therefore, the claim being a public one, this court has no jurisdiction to hear, try and determine the same, and the claim being made by a municipality, it cannot maintain an action against the state of whose sovereign power it is a part.
This claim should, therefore, be dismissed.
Ackerson, P. J., concurs.
Claim dismissed.