FRANK H. HINES, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 18628.)

Court of Claims, April 23, 1929.

*Frank A. Spencer, Jr.* [*John F. Reidy* and *Samuel E. Aronowitz* of counsel], for the claimant.

*Albert Ottinger, Attorney-General* [*John L. Campbell, Deputy Assistant Attorney-General,* of counsel], for the defendant.

BARRETT, J.   Claimant for many years had been a member of the National Guard of this State and had received various promotions in the service until he became colonel and commanding

officer of the One Hundred and Fifth Artillery Regiment of the Guard.

On April 13, 1927, he was requested to resign this position by the commanding officer of the National Guard and at the same time shown a report as to his efficiency in the service. Claimant refused to resign and thereafter, pursuant to section 77 of the National Defense Act, as amended, and section 80 of the Military Law (as amd. by Laws of 1924, chap. 114) of this State, an examining board was created and claimant was directed to appear before this board for examination, which board under said section 80 of the Military Law was empowered to examine into claimant's moral character, capacity and general fitness for the service.

Claimant employed counsel and appeared with his counsel before the board and hearings were held at various times at which witnesses were examined. Findings of the board were made, exonerating him, which were duly approved and on July 2, 1927, he was restored to his command.

In the meantime, he had been suspended from the service and payment of his salary stopped. When he was restored to the service, his salary was restored.

This claim for counsel fees and expenses incurred was presented pursuant to chapter 766 of the Laws of 1928, which act purports to confer jurisdiction on this court to hear, audit and determine the same, the amount thereof paid by claimant, if reasonable, to constitute a legal and valid claim against the State, and the court was further empowered in said act to award judgment for such amount as may be just and equitable not in excess of $15,000.

The State contends that this act is unconstitutional in that it violates article 8, section 9, of the Constitution of this State which forbids the use of State money for a private undertaking.

It is the settled law of this State that the Legislature may recognize a moral or equitable obligation upon the part of the State where no legal liability exists. (*Cole* v. *State*, 102 N. Y. 48; *O'Hara* v. *State*, 112 id. 146; *Munro* v. *State*, 223 id. 208; *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 id. 471.)

But such action of the Legislature is not conclusive and the courts are not thereby precluded from deciding whether the judgment of the Legislature is correct. (*Williamsburgh Savings Bank* v. *State*, 243 N. Y. 231.)

The State here was under no legal liability to claimant unless it was created by legislative act, and the question for decision, therefore, is whether there was a moral or equitable obligation upon the part of the State to claimant which justified the act of the Legislature.

Constitutional enactments for the payment of private claims are divided into two classes. The first have been defined to be claims involving benefits conferred by private persons upon the State without any return benefit on the part of the State, and the second are defined as claims involving injuries and damages wrongfully inflicted upon individuals by those in the State service or others for whose acts the State might justly be regarded as responsible. (*Farrington* v. *State*, 248 N. Y. 112.)

Manifestly this claim does not come within the first classification as no benefit was conferred on the State. Our inquiry, therefore, is narrowed to the question as to whether the claim comes within the second classification.

The material facts are scarcely disputed and are as follows: The commanding officer of the National Guard in the regular course of military affairs had received a report reflecting upon claimant's efficiency in the service. He called claimant before him, read the report to him, told him it confirmed an opinion that had been existing in his (the commanding officer's) mind for some time; that he believed it to be correct; that he was to act on it as it came to him officially and suggested to claimant that he separate himself from the service. This the claimant refused to do. Request was then made for an examining board which was constituted and convened. Claimant employed counsel to appear for him and the examination was conducted at several sessions of the board, the claimant and many witnesses being examined and the board making its findings, exonerating claimant and restoring him to duty and pay, from which in the meantime he had been suspended.

Were these proceedings so unjust and wrongful toward claimant as to create a moral and equitable obligation toward him upon the part of the State for the expenses incurred which obligation the Legislature might recognize?

I think not.

Claimant had accepted a commission in the military service of the State with all of its duties, risks and responsibilities. In its Military Law the State had provided that officers in the service were, when deemed for the good of the service, subject to examination by a board of superior officers. To the risk of this examination claimant had subjected himself by the acceptance of his commission. The commanding officer following the procedure in the Military Law had requested that an examining board inquire into his fitness. There was nothing in these proceedings that wrongfully or unlawfully caused injury or damage to claimant.

He appeared before the board with counsel as he had an undoubted right to do, but the employment of counsel was a personal matter with him and not a benefit to the State.

It is true that it was suggested to him that he resign and that he was suspended from the service without pay, but these were merely acts preliminary to the proceedings before the examining board, and if there was no obligation created by the requirement to appear before the board and the proceedings before the board, then certainly none was created by acts leading up to the proceedings.

Claimant relies on *Farrington* v. *State* (*supra*), but that case differs from this in that there it was expressly held that the removal of claimant from the State service was an unlawful act.

There are many decisions supporting the views I have expressed.

In *Matter of Chapman* v. *City of N. Y.* (168 N. Y. 80), where charges of official misconduct were preferred against an officer of the police department and such charges dismissed and an act of the Legislature subsequently provided for the appointment of a referee to examine into the amount of counsel fees and expenses of a city or county officer successfully defending himself, which amount so allowed was directed to be paid, it was said in the opinion of the court (on pp. 85, 86, 88) regarding the existence of a legal or moral obligation: " In the case before us, however, no benefit was conferred upon the city, and there was never a legal or moral obligation on the part of the city to pay the claim in question * * *. The proceeding instituted against the appellant was not a prosecution for crime, but to discipline or remove him for misconduct as a public officer. There was no authority, statutory or otherwise, to appoint counsel to defend him, and no attempt was made to do so. It was necessary for him to employ and pay his own counsel, as has always been the case with others similarly situated * * *. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense * * *. His defense was for his own benefit, not for the benefit of the city. It was a private matter of his own, the same as if he had been sued by the city in an action at law, and had succeeded in his defense. As we have seen, there was no legal liability or moral obligation on the part of the city to pay his expenses, which were not necessary for the common good and general welfare of the municipality, nor public in character, nor, so far as appears, sanc-

tioned by its citizens. It was in no sense a meritorious claim from the standpoint of public interest or good government, nor one the payment of which is sanctioned by the history of legislation or the acquiescence of the people."

In *Matter of Jensen* (28 Misc. 378; affd.. 44 App. Div. 509), in which case it was sought to obtain the appointment of a referee under the same statute involved in *Matter of Chapman* v. *City of N. Y.* (*supra*), it was said in the opinion of the Appellate Division (at pp. 515, 516):

" In the case of the petitioner, and other officers similarly situated, there was no obligation whatever, legal, equitable or moral, on the part of the State or any municipality in the State, to pay to the acquitted individual the expenses which he had sustained by reason of being subjected to an unsuccessful prosecution for official misconduct  *  *  *.

" The sense of hardship of which I have spoken, however, has never heretofore so impressed itself upon the community as to be regarded as raising an equitable claim against the State for the reimbursement of their expenses on the part of acquitted defendants generally in criminal cases; and it is impossible to perceive any distinction in favor of officers prosecuted for official misconduct which should give rise to a moral obligation in their case not existing in favor of non-official defendants."

In *Schieffelin* v. *Henry* (123 Misc. 792; affd., 215 App. Div. 706; 242 N. Y. 581) an act authorizing the board of estimate and apportionment of New York city to audit expenses including counsel fees incurred in the defense of a police officer upon the trial of an indictment, the amount so audited to be paid by the comptroller of the city, was held unconstitutional.

It is true that in these cases municipal employees or officers were involved, but as CULLEN, Ch. J., in *Lehigh Valley R. R. Co.* v. *Canal Board* (204 N. Y. 471) points out (on p. 475) the constitutional provision in regard to municipal corporations is similar to that affecting State moneys.

An examination of the authorities above mentioned has convinced me that claimant has no legal, moral or equitable claim against the State; that the act in question is unconstitutional and that the claim should be dismissed.

PARSONS, J., concurs.